PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL RESOURCES,
Petitioner,

v.

McDONALD LAND & MINING
COMPANY, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 20, 1995.
Decided Aug. 3, 1995.

Dennis A. Whittaker, Asst. Counsel, for petitioner.

Carl A. Berlin, Jr. and Ann B. Wood, for respondent.

Before PELLEGRINI, FRIEDMAN and NEWMAN, JJ.

PELLEGRINI, Judge.

The Department of Environmental Resources (Department) appeals a decision of the Environmental Hearing Board (Board) awarding McDonald Land & Mining Company (McDonald) attorney fees and expenses under Section 3 of the Costs Act.[1]

On March 23, 1989, the Department denied McDonald's request for a bond release [2] with respect to its mining operation at its Butler site in Lawrence Township, Pennsylvania, pending a hydrologic investigation.[3] McDonald appealed the bond release denial to the Board. Subsequently, on November 13, 1989, the Department issued a compliance order to McDonald and Sky Haven Coal, Inc. (Sky Haven), a company mining land adjacent to the Butler site, requiring them to jointly treat two off-site seeps which were allegedly related to their mining activities. McDonald also appealed this order, which was consolidated with its other appeal before the Board.[4]

To support its issuance of the compliance order and to establish a hydrogeologic connection between the seeps and the Butler site, the Department introduced the testimony of a hydrogeologist in its Bureau of Mining and Reclamation. The Department's hydrogeologist opined that, based upon the to-pography and geologic structure of the area, as well as a chemical analysis of the seeps, such a connection existed. He explained that this opinion was based upon his review of the topography of the area. The hydrogeologist testified that he had only conducted on-site visits and examined the lay of the land and that he had no maps or measurements to support his assumption that the topography of the site sloped to the southeast to create the seeps at issue in this case. Further, the hydrogeologist testified that he had performed only one geologic cross-section to determine the local structure of the area at issue, and had used this cross-section to determine the dip of the land.

However, the hydrogeologist subsequently admitted that the dip upon which he relied in reaching his conclusion varied by as much as 45 degrees from the actual dip as found by Scott Jones, another hydrogeologist with the Department.[5] He also admitted that no water from the Butler site could have reached the seeps if the topography was as described in Mr. Jones' report. The hydrogeologist further stated that, although the lowest point on the property is at the junction of Township Roads 610 and 601, which was at a distance from the seep area, his opinion was based upon the assumption that an impermeable "low wall" existed along the length of Road 601 and caused the water from the Butler site to be diverted into the seeps. The hydrogeologist did not, however, adduce any evidence to establish the existence of this "low wall."

With respect to the chemical analyses which he performed and upon which he re-

---

1. Act of December 13, 1982, P.L. 1127, § 3, *as amended,* 71 P.S. § 2033. To appeal a fee determination under the Costs Act, a party must file a petition for leave to appeal with this Court. 71 P.S. § 2033(e). McDonald's petition was granted on March 24, 1995.

2. Pursuant to Section 4(d) of Surface Mining Conservation and Reclamation Act (SMCRA), a mining permittee is required to post a bond with the Commonwealth, the release of which is conditioned upon the permittee's compliance with SMCRA and other environmental laws. Act of May 31, 1945, P.L. 1198, § 4(d), *as amended,* 52 P.S. § 1396.4(d). After the reclamation and revegetation of the land that was mined, the permittee may request that the bond be released.

Act of May 31, 1945, P.L. 1198, § 4(g), *as amended,* 52 P.S. § 1396.4(g).

3. The denial also stated that portions of the site had not been regraded or revegetated. The Department subsequently admitted that this reason dealt with a different mining site and was therefore irrelevant to McDonald's present appeal.

4. Sky Haven also appealed the compliance order, as well as another order issued against it. That appeal, however, is not at issue in this case.

5. Although he testified as to the dip in the land, Mr. Jones did not testify as to the hydrogeologic connection between the seeps and the Butler site.

lied in determining the existence of a hydrogeologic connection, the hydrogeologist stated that he identified the presence of acid mine drainage at the site and at the seep. He did not, however, examine and compare the chemical components of either the drainage at the site or at the seeps. Moreover, when asked to explain why the water at the seeps was more highly degraded than that on the sites, the hydrogeologist only stated that the water at the seeps began to "catalyze" itself. Additionally, when discussing the chemical analyses which were performed on the water samples, the hydrogeologist stated that some of the samples were from other sites and were included for purposes of demonstrating the possibility of acid mine discharge on other properties.

At the conclusion of the Department's case-in-chief, McDonald moved for a directed adjudication on the issue of the Department's issuance of the compliance order, contending that the Department had failed to adduce a prima facie case. The Board, without deciding whether the Department had established a prima facie case, refused to enter a directed adjudication, noting that it would be required to review McDonald's evidence with respect to the bond release denial.

After all of the evidence had been presented before it, the Board sustained McDonald's appeal from the compliance order. In so doing, the Board held that the Department failed to sustain its burden of proving, by a preponderance of the evidence, that the seeps were hydrogeologically connected to the Butler site. The Board rejected testimony of the Department's hydrogeologist on the hydrogeologic connection, noting that:

> If the Department expects the Board to give serious consideration to the expert opinions presented by it, it would be well-advised to offer witnesses with adequate training and experience who are qualified to conduct competent investigations and to give testimony as experts on the subject matter in question.

With respect to McDonald's appeal from the bond release denial, the Board stated that, because there was no evidence to establish a hydrogeologic connection between the seeps and the Butler site, the appeal would likewise be sustained.

■ McDonald subsequently filed an application for an award of fees and expenses under Section 4(b) of SMCRA,[6] or in the alternative, under Section 3 of the Costs Act.[7] With respect to McDonald's action under the Costs Act, the Board initially addressed the issue of whether McDonald was a party as that term is defined in the Act.[8] The Board rejected the Department's argument that McDonald's sole shareholder, F.W. McDonald, should be considered its "affiliate,"[9] and therefore, his net worth should be considered as part of McDonald's net worth, thus taking it over the $2,000,000 threshold. Holding that only a business, and not an individual can be considered an affiliate, the

---

6. 52 P.S. § 1396.4(b). The Board denied McDonald an award under Section 4(b) of SMCRA. This Court affirmed that decision at *McDonald Land & Mining Co. v. Department of Environmental Resources,* 664 A.2d 194 (Pa.Cmwlth.1995).

7. 71 P.S. § 2033.

8. In pertinent part, Section 2 of the Costs Act defines party as follows:

> A party, as defined in 2 Pa.C.S. § 101, which is an individual, partnership, corporation, association or public or private organization other than an agency. The term does not include:
> (1) Any individual whose net worth exceeded $500,000 at the time the adversary adjudication was initiated and any sole owner of an unincorporated business, or any partnership, corporation, association, or organization

whose net worth exceeded $2,000,000 at the time the adversary adjudication was initiated. 71 P.S. § 2032.

9. The regulations promulgated by the Governor's Office of Budget and Administration under the Costs Act provide that:

> Both the net worth and the number of employees of an applicant and all of its affiliates shall be aggregated to determine eligibility. A party that directly or indirectly controls or owns a majority of the voting shares of another business, or controls, in any manner, the election of a majority of that business' board of directors, ... shall be considered an affiliate for purposes of this subchapter, unless the adjudicative officer determines that the treatment would be unjust and contrary to the purposes of the act in light of the actual relationship between the affiliated entities.
> 4 Pa.Code § 2.15.

Board determined that McDonald was not excluded from being a party under the Costs Act. The Board then examined the evidence adduced by the Department at the hearing and held that it was not substantially justified in issuing the compliance order and in denying McDonald's request for a bond release. Accordingly, the Board awarded McDonald $10,000 in fees and costs.[10] The Department appeals to this Court.[11]

■ The Department contends that the Board erred in determining that McDonald was an eligible party under the Costs Act. The Department argues that F.W. McDonald, as McDonald's sole shareholder, should be considered an affiliate of McDonald and that F.W. McDonald's net worth should be aggregated with that of McDonald. Aggregating the net worth of both of these entities, the Department contends, exceeds the $2,000,000 threshold set forth in the Costs Act.

4 Pa.Code § 2.15 provides that "the net worth ... of the *applicant* and all of its affiliates shall be aggregated to determine eligibility [under the Costs Act]." (Emphasis added). That Section of the Code further provides that a *"party* that directly or indirectly controls or owns a majority of the voting shares of another business, or controls, in any manner, the election of the majority of that business' board of directors, trustees, ... shall be considered an affiliate for purposes of this subchapter." 4 Pa.Code § 2.15 (emphasis added). For F.W. McDonald, then, to be considered an affiliate of McDonald, he must be a "party." "Party," however, is defined at 2 Pa.C.S. § 101 [12] as being "[a]ny person *who appears* in a proceeding before an agency who has a direct interest in the subject matter of such proceeding." (Emphasis added). In the present case, since the mining permit and compliance orders were issued to McDonald, then it, and not F.W. McDonald, was the "applicant" and the "party" before the Board. Moreover, F.W. McDonald never individually appeared in the proceedings before the Board. As such, he is not an affiliate of McDonald as set forth in 4 Pa.Code § 2.15, and his net worth should not be aggregated with that of McDonald.[13]

■ The Department also contends that the Board erroneously concluded that its actions were not substantially justified. On this issue, the Department contends that the Board failed to consider the fact that it was "acting in furtherance of the broad remedial purposes of" SMCRA. Moreover, the Department contends that, since there was conflicting evidence on the crucial issue of whether the seeps were hydrogeologically connected to McDonald's activities on the Butler site, and since there was competent evidence produced by the Department to support its position, then it was substantially justified in denying McDonald's request for a bond release and in issuing the compliance order.

■ Section 3(a) of the Costs Act provides that "a Commonwealth agency that initiates an adversary adjudication shall award to the prevailing party ... fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer finds that the position of the agency, as a party to the proceeding, was substantially justified or that special circumstances make the award unjust." 71 P.S. § 2033(a). The

---

**10.** Although McDonald's fees and costs exceeded $10,000, this is the maximum award that can be made under the Costs Act. *See* 71 P.S. § 2032.

**11.** Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or the necessary findings of fact are not supported by substantial evidence. *West v. Western Center, Dept. of Public Welfare,* 163 Pa.Commonwealth Ct. 315, 641 A.2d 41 (1994).

**12.** 2 Pa.C.S. § 101 is cited by the definition of "party" set forth in the Costs Act. 71 P.S. § 2003.

**13.** It should be noted that, in the regulations promulgated pursuant to the Federal Equal Access to Justice Act, 5 U.S.C. § 504, "affiliate" is defined as any *"individual,* corporation or other entity that directly or indirectly controls or owns a majority of the voting shares or other interests of the applicant, or any corporation or other entity of which the applicant directly or indirectly owns or controls a majority of the voting shares or other interest." 1 C.F.R. § 315.104(f). Under this language, F.W. McDonald would be considered an affiliate of McDonald.

position of an agency will be deemed to be substantially justified when that position has a reasonable basis in law and fact. 71 P.S. § 2032.[14] The purpose of the Costs Act is to reimburse a party for the costs it has incurred when "it has been so subjected to the unreasonable actions of an administrative agency that there is no other recourse than to litigate in order to straighten things out." *West v. Western Center, Dept. of Public Welfare,* 163 Pa.Commonwealth Ct. 315, 641 A.2d 41 (1994). For this reason, if the agency fails to adduce any competent evidence to prove the facts required to support its actions, then the position of the agency is not substantially justified, and the prevailing party challenging the agency's actions is entitled to an award under the Costs Act. *Carlisle Electric, Inc. v. Commonwealth, Dept. of Labor,* 101 Pa.Commonwealth Ct. 359, 516 A.2d 437 (1986) (the standard of review set forth in this case has been superseded by the Act of June 6, 1987, P.L. 175, which amended Section 3(e) of the Costs Act to provide that a review of a fee determination shall be in accordance with 2 Pa.C.S. § 704). The testimony of an expert witness offered by an agency to support its actions will be deemed not competent if it has no basis in law and fact. *See Sears, Roebuck & Co. v. Workmen's Compensation Appeal Board,* 48 Pa.Commonwealth Ct. 161, 409 A.2d 486 (1979).

In the present case, the evidence offered by the Department to prove that the seeps are hydrogeologically connected to McDonald's mining operations at the Butler site lacks a reasonable basis in fact. Not only did the Department's hydrogeologist rely upon the existence of a "low wall" along the Butler site when there was no evidence that such a low wall existed, but he also reached his conclusion based upon a dip in the land which varied significantly from the actual dip. Given that this testimony was the only evidence offered by the Department to prove the existence of a hydrogeologic connection between the Butler site and the seeps, the Board properly concluded that its actions were not substantially justified.

Accordingly, the decision of the Board awarding McDonald attorney's fees and costs under the Costs Act must be affirmed.

### ORDER

AND NOW, this 3rd day of August, 1995, the order of the Environmental Hearing Board at Nos. 89–096–MJ, 89–556–MJ, 89–596–MJ, and 89–597–MJ, dated January 17, 1995, is affirmed.

14. This section further specifies that "[t]he failure of an agency to prevail in a proceeding, or the agreement of the agency to settle a controversy, shall not raise a presumption that the position of the agency was not substantially justified." 71 P.S. § 2032.