728 So.2d 855 (1999)
EXXON PIPELINE COMPANY
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
Entergy Louisiana, Inc.
v.
Louisiana Public Service Commission, et al.
Nos. 98-CA-1737, 98-CA-1738.
Supreme Court of Louisiana.
March 2, 1999.
Rehearing Denied April 23, 1999.
*856 Jeffrey W. Bennett, Joseph H. Kavanaugh, Philip A. Franco, New Orleans, Robert L. Rieger, Jr., Baton Rouge, Richard V. Hansum, Houston, TX, Counsel for Applicant in No. 98-CA-1737.
Eve K. Gonzalez, Counsel for Respondent in No. 98-CA-1737.
Terrence G. O'Brien, Stephen T. Perrien, J. Wayne Anderson, New Orleans, Counsel for Applicant in No. 98-CA-1738.
Eve K. Gonzalez, Counsel for Respondent in No. 98-CA-1738.
MARCUS, Justice.[*]
This case comes before us as a consolidated appeal pursuant to La. Const. art. IV, § 21(E) filed by Exxon Pipeline Company (hereinafter "Exxon") and Entergy Louisiana, Inc. (hereinafter "Entergy") from a judgment of the Nineteenth Judicial District Court affirming Order Nos. U-20698-A and U-20698-B of the Louisiana Public Service Commission (hereinafter sometimes "PSC").

FACTS AND PROCEDURAL HISTORY
During the late 1970's, Exxon built three pumping stations in Louisiana at Klotzville, Bayou Goula, and Clovelly Farms, as part of its pipeline network for the transportation of crude oil from the Louisiana Offshore Oil Port to its Baton Rouge refinery. It contacted Louisiana Power & Light Company (referred to hereinafter by the name of its successor corporation, "Entergy") to obtain electrical power to operate the three stations. *857 Because of the remote locations of the pumping stations, it was necessary for Entergy to first construct power line extensions and substations in order to provide the requested service.
Exxon and Entergy, both sophisticated corporations, commenced negotiations in July, 1979 and executed an Electric Service Agreement for each of the Exxon pumping stations in 1980. The contracts had several salient features. Each was for a contract term of ten years. Each provided that Exxon would advance the construction costs involved in building facilities capable of providing electric service to the remote pumping stations, and each provided that Entergy would refund the advanced construction costs over the ten year contract in annual payments with interest. Moreover, each contract provided for payment of a monthly "facilities charge" equal to 1.67% of the value of the facilities constructed by Entergy, which charge could be renegotiated if the remote facilities were ever used to serve other customers of Entergy. Each contract also provided that Exxon was obligated to "take or pay" for a certain minimum amount of electrical service each month. Finally, each stipulated that the PSC approved "Large Industrial Service" rate (hereinafter "LIS") would be charged for the power supplied. Alternative PSC approved rates were available at the time to commercial customers such as Exxon. In addition to the LIS rate, Entergy also offered a "Large General Service" rate (hereinafter LGS) and a "General Service" rate (hereinafter GS). Which rate best suited a given customer depended on that customer's level of anticipated power usage.
The PSC concluded, based on the testimony of witnesses presented and evidence filed into the record, that at the time the contracts were entered into in 1980, Exxon was aware of the available alternative power rates. Exxon believed that it would use substantial amounts of electrical power at the plants. Under that forecast, the LIS rate stipulated in the contracts would be the appropriate and most economical rate for Exxon. However, after a few years of operation, Exxon's utilization of the pumping stations proved less than originally expected. Under the then prevailing circumstances, it appeared that Exxon might benefit if Entergy provided electrical service under its LGS rate plan.[1] An Exxon representative contacted Entergy in May, 1982 and discussed whether Exxon's level of power usage justified continuing under the LIS rates originally selected. Entergy advised that Exxon should put a rate change request in writing if it decided to pursue a change. On March 22, 1983, Exxon requested in writing that Entergy change the rate being charged under the 1980 contracts.
Pursuant to Exxon's written request for contract revisions, the two corporations commenced negotiations to modify the 1980 contracts. In August of 1984, the contracts were amended in several important respects. The facilities charge of 1.67%, previously to be recouped every month for ten years, was left unchanged. However, the mandatory contract term was reduced from ten years to five years. The minimum "take or pay" amount to be paid monthly by Exxon was significantly reduced and the contract was further amended to stipulate that two of the pumping stations would be billed under the LGS rate and the third at the normal GS rate, all retroactive to December 31, 1983. In consideration for some or all of the contract modifications, Exxon paid Entergy a lump sum of $1,064,740.00.[2] Credited against that amount was the remaining balance Entergy still owed Exxon for advancing the facility construction costs, which would otherwise have been payable in annual installments over the remaining life of the original ten year contract.
From 1984 through 1993, the parties abided by the terms of the renegotiated contracts, apparently without incident. Nine years after the contracts were revised, Exxon *858 on instituted this proceeding before the PSC on November 19, 1993 for alleged overcharges under the contracts. Specifically, Exxon sought a refund of $660,239.95 representing the differential in the rates it paid before and after the 1984 contract revisions. It also sought a refund of the $1,064,740 lump sum payment made at the time the contracts were amended in 1984. Finally, Exxon sought a refund of the 1.67% monthly "facilities charges" paid under the contracts amounting to $1,233,528.30 and an order relieving it from paying those charges in the future.
During pre-hearing proceedings, Entergy filed an exception to the PSC's subject matter jurisdiction, asserting that the complaint was really in the nature of a contract dispute. Exxon had pleaded, inter alia, error in the confection of the original contracts and Entergy had pleaded the affirmative defense of transaction and compromise. After briefing by the parties, the commission concluded that the exception should be granted in part and denied in part. PSC issued Order No. U-20698, finding:
Those claims of Exxon Pipeline Company which seek the Commission's interpretation, determination of validity, or enforcement of the contracts entered into by the parties are hereby dismissed, for lack of subject matter jurisdiction.
The Order further stipulated that PSC had subject matter jurisdiction:
only over those of Exxon's claims that assert LP & L's imposition of unfair and unreasonable charges for service provided to the pumping facilities, as well as Exxon's claims for a refund of any amounts overcharged.
Neither party requested appellate review of the PSC order declining subject matter jurisdiction over certain of Exxon's claims.

ORDER NOS. U-20698-A and U-20698-B
After due proceedings were had on the remaining claims, PSC issued Order No. U-20698-A. It found that Entergy acted properly in connection with the rates fixed under the original 1980 contracts, which were based on Exxon's expectations for power usage at that time. However, PSC found that as soon as the customer made a written request for application of an alternate rate in March, 1983, Entergy had a duty to timely change the rate but delayed unnecessarily in doing so from March, 1983 through the effective date of the contract revisions, Dec. 31, 1983. It concluded that for those months, March-December, 1983, the rate charged the customer was inappropriate and resulted in an overcharge. Nevertheless, the PSC also decided that the ten year prescriptive period set forth in La. Civ.Code art. 3499 applied to the customer complaint such that Exxon's claim for the charges in all but the last two of those months was prescribed. It awarded Exxon a refund of $32,816 for the months of November and December of 1983, plus legal interest from date of the complaint, pursuant to La. Civ.Code art. 2934.
The PSC further found that the 1.67% "facilities charge" was a fair and reasonable representation of the ongoing costs associated with the electrical service to the remote facilities and that the facilities charge was consistent with Entergy's PSC approved rates and PSC policy. Finally, PSC determined that it had already ruled in Order U-20698-B that it would not review the contract related claim for a refund of the lump sum paid in connection with the 1984 contract revisions since that claim required findings of fact outside the province of the PSC's subject matter jurisdiction.[3] The PSC considered its prior order final. After a request for rehearing, PSC amended its initial order and determined that no prescriptive period applied to Exxon's claims. By Order No. U-20698-B, it increased the award to $218,460.00 (representing the full overcharge period from March through December, 1983) plus legal interest, and otherwise affirmed Order No. U-20698-A.
*859 Both Exxon and Entergy appealed the PSC Orders to the 19th Judicial District Court. The district court affirmed the Orders of the PSC in all respects. The parties now appeal on various grounds to this court.

CLAIMS ON APPEAL
Exxon claims that the PSC was arbitrary and capricious: 1)in declining jurisdiction and refusing to make findings of fact in support of a refund of the lump sum paid in connection with the 1984 contract revisions; 2) in awarding a refund of the differential rates paid from March, 1983 through December 31, 1983 instead of from the inception of the contracts in 1980; 3) in failing to refund "facilities charges" paid in the past and terminate those due under the contracts in the future; and 4) in failing to award legal interest from the date the overcharges were paid rather than from date of filing the petition in 1993.
Entergy claims that no award at all should have been made to Exxon. It claims that at the time it renegotiated the contracts with Exxon in 1984 it was under no duty to do so, because no rule of the PSC required it to revise contracts providing for service at lawful PSC approved rates upon customer request due to after-occurring conditions. It argues that any rules that require utility companies to advise customers of more economic rates and to timely adjust rates downward were adopted long after the 1984 contract revisions. Thus, PSC cannot order a refund based on retroactive application of a rule not in effect at the relevant times.[4]
Entergy alternatively argues that all of Exxon's claims are prescribed under a one year statute of limitations set forth in La. R.S. 45:1198.

STANDARD OF REVIEW
The law applicable to our review of orders of the PSC was set forth by this court in Central Louisiana Elec. Co. v. Pub. Serv. Comm'n, 508 So.2d 1361 (La.1987) wherein we noted:
Initially, as the orders of the Commission are entitled to great weight, they should not be overturned absent a showing of arbitrariness, capriciousness, or abuse of authority by the Commission. Secondly, courts should be reluctant to substitute their own views for those of the expert body charged with the legislative function of rate-making. Lastly, a decision of the Commission will not be overturned absent a finding that it is clearly erroneous or that it is unsupported by the record. 508 So.2d at 1364.
The rule we enunciated in Central Electric applies to commission findings of fact and conclusions based on those facts. In addition, deference is paid to the commission's interpretation of its own rules and orders. However, when the commission's rulings turn on interpretation of a statute or a judicial decision, this court reviews commission rulings for errors of law and no deference is paid to the legal conclusions of the commission or the district court. Entergy Louisiana, Inc. v. Louisiana Pub. Serv. Comm'n, 98-0475 (La.9/9/98), 717 So.2d 217; Washington St. Tammany Elec. Coop., Inc. v. Louisiana Pub. Serv. Comm'n, 95-1932 (La.4/8/96), 671 So.2d 908. The contention that Exxon's claims are prescribed based on the undisputed facts, that the PSC wrongfully declined subject matter jurisdiction of certain refund claims, and that the PSC improperly awarded only post-petition interest, all involve assertions of legal error. On the other hand, Exxon's claim that the "facilities *860 charges" are unreasonable depends on a factual determination by the commission that must be affirmed unless arbitrary and capricious or unsupported by the record.
Because our resolution of the prescription issue may make it unnecessary to address many of Exxon's claims, we first consider whether Exxon's right to seek relief is barred by a statutory period of limitations.

ENTERGY'S PRESCRIPTION DEFENSE
Entergy claims that La. R.S. 45:1198 sets forth a one year prescriptive period for customer complaints before the commission. Exxon argues that the statute should not be interpreted to apply to customer complaints unless the complaint is predicated on a particular order of the commission. A determination of whether Exxon's claims are prescribed under the one year period set forth in La. R.S. 45:1198 depends on our interpretation of the scope and application of the statute.
In Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, we reviewed settled principles of statutory interpretation. Therein we noted that the starting point in interpreting any statute is the language of the statute itself. Where part of an act is to be interpreted, it should be read in conjunction with the rest of the act. In resolving any ambiguity, text is to be interpreted according to the generally prevailing meaning of the words employed. In many cases, the legislative history of an act and contemporaneous circumstances may be helpful guides in ascertaining legislative intent. With these principles in mind we turn our attention to the interpretation and application of La. R.S. 45:1198.
La. R.S. 45:1198 is found within Chapter 9, Part 5 of Title 45 of the Louisiana Revised Statues dealing with Public Utilities. Chapter 9 has general application to all types of public utilities. Part 5 of Chapter 9 is comprised of particular rules for the composition, election, and activities of the Public Service Commission, which is a constitutional entity empowered by La. Const. art. IV § 21(B) with the authority to regulate all public utilities and to adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties.
Our examination of Part 5 makes it clear that La. R.S. 45:1198 must be read in conjunction with the two preceding sections, La. R.S. 45:1196 and La. R.S. 45:1197. These three sections of Part 5 originated as §§ 1-3 of La. Acts 1912, No. 175. Their language has remained virtually unchanged to the present date. When read in sequence, the three sections are clear and unambiguous and demonstrate that La. R.S. 45:1198 establishes a prescriptive period for customer complaints before the commission.
The starting point is La. R.S. 45:1196, which provides in pertinent part:
Any person ... complaining of anything done or omitted to be done ... by any person subject to regulation and control by the commission, in contravention of any order, rule, regulation, rate, or classification adopted or approved by the commission may apply to the commission by petition, briefly stating the facts ... (emphasis added).
La. R.S. 45:1196 then provides that the commission must give the person against whom complaint is made a reasonable time to answer the charges. If no answer is timely made or there appears to be reasonable grounds for investigation, La. R.S. 45:1196 provides that:
it shall be the duty of the commission to investigate the matters complained of as it deems proper.
In the event that the commission holds hearings on a complaint made pursuant to La. R.S. 45:1196 and finds just cause for the complaint, the commission is authorized by La. R.S. 45:1197 to enter an order requiring the payment of damages. La. R.S. 45:1197 provides:
If after a hearing on the complaint provided for in R.S. 45:1196 the commission determines that any party complainant is entitled to an award of damages for violation of any of the orders, rules, regulations, rates, or classifications adopted or approved by it, the commission shall make an order directing the persons mentioned in R.S. 45:1196 as subject to the control of *861 the commission to pay to the complainant the sum to which he is entitled on or before a named day.
Having set forth a statutory mechanism for the bringing of a customer complaint, providing authority for the commission to award damages to a customer, and directing the customer to the district court to enforce a commission award, the legislature then addressed in La. R.S. 45:1198 the period of limitations applicable to the actions contemplated by the two preceding sections. It established a period of limitations for the initiation of a customer complaint with the commission pursuant to La. R.S. 45:1196 and a period of limitations for enforcing an order issued based on such a complaint in court pursuant to La. R.S. 45:1197. The final and controlling sentence of La. R.S. 45:1198 provides:
All complaints for the recovery of damages shall be filed with the commission within one year from the time the cause of action accrues, and a petition for the enforcement of an order for the payment of money shall be filed in the court within one year from the date of the order. (Emphasis added.)
There can be no question that La. R.S. 45:1198 establishes periods of limitation both for customer complaints before the commission and for the subsequent enforcement of resulting orders in a district court.[5]
We next address whether the period of limitations in La. R.S. 45:1198 applies to the type of customer complaint brought by Exxon in this case. Exxon argues that La. R.S. 45:1198 only applies when a customer complaint is predicated on a pre-existing order of the commission in favor of the customer. We do not agree. First, the plain language of the statute demonstrates that La. R.S. 45:1196 does not speak only to customer complaints based on a pre-existing order. Rather it gives an aggrieved customer the right to bring a customer complaint based on the alleged violation of any order, rule, regulation, rate, or classification. Here the gravamen of Exxon's complaint is that Entergy violated a commission rule, albeit an unwritten one, that imposes a continuing duty on utility providers to place customers in the most advantageous rate classification available, notwithstanding a prior contractual agreement stipulating a different rate.[6] In our view this type of complaint falls within the purview of La. R.S. 45:1196; it requires determinations regarding PSC rates and classifications that are peculiarly within the expertise of the PSC. Hence, the claims are governed by the period of limitations made applicable to such proceedings in La. R.S. 45:1198.
Exxon also argues that our holding in Dixie Elec. Membership Coop. v. Louisiana Pub. Serv. Comm'n, 509 So.2d 1002 (La.1987) dictates a different result. Again we disagree. In Dixie we were not dealing with an appeal arising out of a customer complaint. Rather, the order at issue in Dixie emanated from a proceeding initiated and prosecuted by the PSC. We upheld the PSC determination that Dixie was not entitled to retain a rebate received from its wholesale supplier of energy and was required to pass this rebate on to its customers by crediting it against future billings. Any language in Dixie that could be construed as speaking to the applicability of La. R.S. 45:1198 to individual customer complaints was dicta, since no customer complaint was before us in Dixie.
The position advanced by Exxon is that customer complaints for overcharges are not governed by any prescriptive period and are imprescriptible. Exxon has not called to our attention any authority for the proposition that where a utility code provides a period of limitations for customer complaints, that *862 prescriptive period should be disregarded. To the contrary, our research reveals that where jurisdictions provide for a period of limitations on customer complaints against regulated utilities, they are routinely applied.[7] Indeed, in jurisdictions where the laws governing utilities do not provide for a specific period of limitations for customer complaints for overcharges and/or where customers are able to pursue such claims directly in a court of law, a search is often made of general principles to find an applicable prescriptive period.[8] Thus, there appears to be no compelling recognized public policy against enforcing a period of limitations on customer complaints before the PSC.
Our review of the legislative history of La. R.S. 45:1198 and its source legislation reinforces our conclusion that it establishes a prescriptive period for customer complaints like the one at issue herein. The source of La. R.S. 45:1198 is La. Acts 1912, No. 175 § 3. The 1912 Act gave authority to the Railroad Commission of Louisiana, the precursor of the PSC, to hear customer complaints and make awards with respect thereto in favor of shippers and consignees. The preamble to the Act clearly referenced the establishment of a prescriptive period for the filing of claims with the commission as well as subsequent actions to enforce commission awards in court. It described the purpose of the Act to include an intent:
to fix a period of prescription for the filing of such claims for damages before the Commission, and for the filing of suits for the collection of such damages, as may be awarded by the Commission ... (emphasis added).
The main activity of the Railroad Commission was the regulation of railroads and motor carriers. The Interstate Commerce Commission exercised similar jurisdiction pursuant to federal law. The 1906 version of the Interstate Commerce Act embodied language remarkably similar to our statute enacted in 1912. The Hepburn Act of 1906 provided:
All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after, and a petition for the enforcement of an order for the payment of money shall be filed in the circuit court within one year from the date of the order, and not after....
Because of the similarity of language and purpose between Act No. 175 and the Hepburn Act, decisions of the United States Supreme Court interpreting this 1906 version of the Hepburn Act are instructive.[9] Those decisions consistently interpreted the act as providing a limitations period for the filing of customer complaints against regulated companies before the Interstate Commerce Commission. See A.J. Phillips Co. v. Grand Trunk W. Ry. Co., 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774 (1915); United States ex rel. Louisville Cement Co. v. Interstate Commerce *863 Comm'n, 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914 (1918).
As originally constituted, electric companies did not fall under the jurisdiction of the Railroad Commission. Thus when an early attempt was made to apply Act. No. 175 to claims against electric power providers, our court rejected the attempt, reasoning that the legislature had not intended the Act to cover such cases because it was passed with reference to the Railroad Commission, which did not have jurisdiction over electric companies. Morrison Cafeteria of Louisiana, Inc. v. Louisiana Pub. Serv. Comm'n., 181 La. 932, 160 So. 634 (1935).
Since the passage of La. Acts 1912, No. 175, however, the Railroad Commission has been replaced by the Public Service Commission, which was first created by Section 3 of Article 6 of the Constitution of 1921 and vested with the authority to regulate all public utilities, including electric service providers. City of Monroe v. Louisiana Pub. Serv. Comm'n, 233 La. 478, 97 So.2d 56 (1956). When our statutes were revised and codified in 1950, essentially the same language originally found in Act 175 was retained. The broad language concerning complaints before the PSC against any company under PSC jurisdiction, together with the placement of La. R.S. 45:1196-1198 in Part 5 of Chapter 9, which applies to all public utilities, clearly indicates that the three sections which had their source in La. Acts 1912, No. 175, apply to all customer complaints regarding all public utilities under the jurisdiction of the PSC.
A finding that customer complaints are subject to a statutory period of limitations does not mean that every customer complaint will necessarily be dismissed if a petition before the PSC is filed more than one year after the alleged wrongful act. In an appropriate case, contra non valentum might apply to prevent the running of prescription.[10] However in this case, it is clear from the record Exxon knew it was being charged a disadvantageous rate at least as early as March, 1983. Exxon was on notice of every fact underlying its claims by 1984 when the contracts were amended. Since Exxon was on notice of all of the salient facts, no actions on the part of Entergy can be said to justify the application of contra non valentum in this case.[11]
We further note that the application of a statutory period of limitations to customer complaints does not necessarily provide an absolute shield to a utility company that has overcharged its customers. Our holding in Dixie suggests that La. R.S. 45:1198 does not apply to the commission's own actions. Under *864 an appropriate set of circumstances, there may be no prohibition against the commission initiating its own proceedings and ordering any relief justified by the facts and the law, even though the same complaint by the customer would be time barred.[12]
Our determination that La. R.S. 45:1198 applies to the customer complaint in this case and that Exxon knew of the grounds for its complaint more than one year before it filed its 1993 petition, mandates our conclusion that all claims for alleged overcharges between 1980 and 1984 are prescribed, including the claim that the lump sum paid in connection with contract renegotiations in 1984 constituted an overcharge entitling Exxon to a refund. Our resolution of these claims makes it unnecessary for us to reach Exxon's claim that the PCS's interest award was not computed properly. We likewise find it unnecessary to reach the issues of whether the PSC properly denied subject matter jurisdiction over the lump sum payment overcharge claim in Order No. U-20698 and whether that order should be considered final and non-reviewable.

THE FACILITIES CHARGE
Exxon claims that it continues to pay the "facilities charge" stipulated in the 1984 revised contracts and that this charge is unreasonable and amounts to an overcharge entitling it to a refund and prospective relief. Since certain of the charges still being paid are not prescribed, we review the PSC rejection of this Exxon claim to determine whether it was arbitrary and capricious. We find that it was not.
Our review of the record convinces us that the commission had a sufficient basis for its conclusion that the PSC approved rates charged by Entergy permitted an additional "facilities charge" and that the charge made was reasonable. The original and revised contracts between the parties were introduced into the record. Both before and after the 1984 revisions, the contracts stipulated for a monthly facilities charge computed at 1.67% of the original construction cost of line extensions and substations built especially for Exxon and used exclusively by Exxon. Testimony established that the assessment of a facilities charge is designed to protect other ratepayers from bearing the burden of facilities constructed to serve the needs of a single customer. Entergy presented evidence to substantiate that the 1.67% monthly charge is equivalent to its estimated costs for maintenance and replacement costs of the facilities, plus a fair return on the investment and a recovery of the construction costs. Exxon presented no evidence to rebut Entergy's claim that the 1.67% charge fairly represented its costs related to the facilities. Furthermore, PSC found that the PSC approved rates charged before and after the contract revisions, allowed such additional charges which inure to the benefit of the general ratepaying public. Any divergence between internal Entergy Service Regulations and the published rate schedules (which allow an additional charge in connection with remote *865 facilities) is resolved in favor of the published rate, which has more specific application. PSC concluded that the facilities charges were not unreasonable and did not constitute an overcharge. The PSC findings affirmed by the district court are fully supported by the record in the case. The commission was not arbitrary and capricious in rejecting Exxon's claim for retrospective and prospective relief from the contractual "facilities charge."

DECREE
For the reasons assigned, the judgment of the district court affirming PSC Order Nos. U-20698-A and U-20698-B is reversed insofar as it affirmed the PSC's denial of Entergy's exception of prescription and affirmed the PSC's award of a refund to Exxon of $218,460 with interest. The exception of prescription is maintained, pursuant to La. R.S. 45:1198. All claims for overcharges made from 1980 through 1984 are prescribed, including the claim that the lump sum paid in connection with the 1984 contract revisions constituted an overcharge entitling Exxon to a refund. Otherwise, the judgment of the district court is affirmed.
NOTES
[*] Knoll, J. not on panel. Rule IV, Part 2, § 3.
[1] The LGS rate is not applicable to a customer having more than a 3,000 kilowatt maximum demand at any one peak time and is designed for delivery of power at voltages lower than 13,800. The LIS rate is applicable to customers with up to a 25,000 kilowatt peak demand and provides for higher voltage delivery.
[2] The parties labeled this payment as "liquidated damages."
[3] In order to find that the payment constituted an improper overcharge, the PSC would have had to determine whether the payment was made only for the rate change, or whether and to what extent it may also have been motivated by Exxon's desire to secure the other contract modifications that were beneficial to it and/or whether there may have been breaches of contract by Exxon.
[4] The PSC made a finding in this case that it had a long-standing policy of requiring public utilities to bill customers at the lowest available PSC approved rate upon customer request. Implicit in its ruling, is the PSC's conclusion that this policy was enforceable and that a violation of the policy could support an award of damages. Although no written document was produced to confirm that this policy dated back to the early 1980's, Exxon and the PSC call our attention to a PSC General Order issued Nov. 2, 1987, requiring providers to audit customer records and advise customers when more favorable rates are available. We will assume, for purposes of this opinion only, that the PSC did have in place an enforceable policy requiring a utility company to bill at a different available rate than that set by contract when a customer so requests. If we did not presuppose the existence of a duty on the part of Entergy to change the contractual rate upon customer request, there would be no basis at all for Exxon's refund claim. No other breaches of duty on the part of Entergy are asserted with respect to Exxon's billing rates.
[5] We refer throughout this opinion to customer complaints because in this case Exxon was a customer of Entergy. However, the coverage of La. R.S. 45:1196-1198 is broader in scope and also addresses claims made by other third parties before the commission.
[6] In some states the obligation to compute bills under the most advantageous rate to the customer is expressly provided in the Public Utility Code. See, for example, 66 Pa. C.S. § 1303, which has been interpreted as imposing that duty only when the customer shows that the utility had actual knowledge of the changed service conditions. Springfield Township v. Penn. Pub. Utility Comm'n, 676 A.2d 304 (Penn.Cmwlth. 1996).
[7] See Springfield Township v. Penn. Pub. Utility Comm'n, 676 A.2d 304 (Penn.Cmwlth.1996)(applying 66 Pa.C.S. § 1312(a), a hybrid limitations provision which limits a customer's claim to a refund of payments made within four years of the date of filing a complaint); Duquesne Light Co. v. Penn. Pub. Utility Comm'n, 148 Pa.Cmwlth. 378, 611 A.2d 370 (1992) (applying three year limitation period in Pa.C.S. § 3313(a)); Metropolitan Edison Co. v. Penn. Pub. Utility Comm'n, 62 Pa.Cmwlth. 460, 437 A.2d 76 (1981) (applying Pa.C.S. § 3313(a) to order a refund of overcharges collected within two years of filing petition); Sprint Communications Co. v. Federal Communications Comm'n, 76 F.3d 1221 (D.C.Cir.1996) (applying two year statute of limitations imposed by 47 U.S.C § 415 to customer complaint for telephone overcharges before the FCC); Cal. Pub. Utilities Code § 736 (three year period); Idaho Code § 61-642 (three year period); Wash. R.C. § 80.04.240 (applying two year limitation period).
[8] See Pub. Serv. Co. of Oklahoma v. Norris Sucker Rods, 917 P.2d 992 (Okla.App.1995) (where no specific prescriptive period for the filing of customer complaints was provided, the court looked to and applied a general statutory prescriptive period for liability based on the violation of a statute as the most analogous available period); Lipp v. Con Edison, 158 Misc.2d 633, 601 N.Y.S.2d 659 (1993) (applying six year contract limitations period); Nucor Corp. v. Nebraska Pub. Power District, 891 F.2d 1343 (8th Cir.1989) (breach of contract limitations period used).
[9] We note that although the Hepburn Act has been amended on a number of occasions, federal utilities law still imposes a period of limitations on customer complaints filed against rail carriers before the Surface Transportation Board, successor to the Interstate Commerce Commission. 49 U.S.C. § 11705(c).
[10] The federal period of limitations was interpreted to be a peremptive one in Phillips, 236 U.S. at 667, 35 S.Ct. 444. However, we note that our statute deletes the phrases "and not after" that appear after each stipulated time period in the 1906 Hepburn Act. In addition, the preamble to the source of La. R.S. 45:1196-1198 specifically describes the limitations period as prescriptive. Legislative purpose is one of the most significant factors in distinguishing peremptive from prescriptive statutes and the legislature's description of the object of an act must be given weight in determining such intent. Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986). Although we need not resolve the issue in this case, there is good reason to argue that La. R.S. 45:1198 is prescriptive. Our rationale and rules for application of contra non valentum are set forth in Plaquemines Parish Comm'n Council v. Delta Development Co., 502 So.2d 1034 (La.1987) and Corsey v. State, Through Dept. of Corrections, 375 So.2d 1319 (La.1979). Jurisdictions employing a prescriptive period to bar customer claims against regulated utilities frequently apply concepts similar to our contra non valentum rule where the facts justify a finding that the prescriptive period should be tolled by conduct of the utility. See Pub. Serv. Co. of Oklahoma v. Norris Sucker Rods, 917 P.2d 992 (Okla.App.1996); Sprint Communications Co. v. Federal Communications Comm'n, 76 F.3d 1221 (D.C.Cir.1996); Lipp v. Con Edison, 158 Misc.2d 633, 601 N.Y.S.2d 659 (1993); Nucor Corp. v. Neb. Pub. Power Dist., 891 F.2d 1343 (8th Cir.1989).
[11] We reject Exxon's argument that the matter should be remanded to the PSC for a further hearing on prescription. Exxon was aware that it could be billed under more advantageous rates, demanded such rates, and amended its contracts to reflect those rates in 1984. No overcharges based on billing rates are alleged to have occurred after the contracts were revised retroactive to December 31, 1983. A remand would serve no useful purpose in this case. We likewise reject Exxon's argument that our decision be given prospective application only. The statute in dispute has been in effect throughout the circumstances surrounding this litigation. Our decision today does no more than confirm its application to these facts.
[12] The Colorado Supreme Court dealt with the distinction between customer complaints and Public Utilities Commission ("PUC") initiated actions in Peoples Natural Gas Div. of N. Natural Gas Co. v. Pub. Utilities Comm'n of the State of Colo., 698 P.2d 255 (Colo.1985). There the PUC initiated its own proceeding and ordered a refund of an overcharge pursuant to C.R.S. 40-6-119, a statute identical in all pertinent respects to La. R.S. 45:1198. The utility company argued that since the individual customers did not file timely complaints with the PUC, the PUC itself was precluded from commencing an investigation on its own motion and ordering a refund to the customers. The court disagreed, noting that the PUC's right to initiate its own investigations and make refund orders is derived from its authority to do all things necessary to the regulation of rates. Providing a forum for an essentially private customer initiated complaint, however, raises other policy considerations. As to the limitations period on customer complaints the court noted:

That limitation period serves an important purpose, however, even though not applicable to the PUC, for only if a ratepayer files a complaint within the period prescribed by section 40-6-119 can the complainant be assured of an investigation of the matter by the PUC. Thereafter, initiation of any investigations and award of reparations is committed entirely to the sound discretion of the PUC. 698 P.2d at 263.
The Louisiana PSC advanced the same distinction in its reply brief filed with this court in Dixie Elec. Membership Coop. v. Louisiana Pub. Serv. Comm'n, 509 So.2d 1002 (La.1987), arguing that La. R.S. 45:1196-1198 apply only to third-party actions before the commission and not to proceedings initiated by the commission itself.