611 A.2d 370

**DUQUESNE LIGHT COMPANY, Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 12, 1992.

Decided June 5, 1992.

Stephen R. Pelcher, for petitioner.

Patricia Krise Burket, Asst. Counsel, for respondent.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

Public utility Duquesne Light Company (Duquesne) petitions for review of the August 20, 1991 order of the Pennsylvania Public Utility Commission (PUC) which sustained the formal complaint of customer/ratepayer Elmer Jonnet (Ratepayer) against Duquesne and held that Ratepayer did not owe Duquesne $366.03 for electric service furnished to 127 Monticello Drive, Monroeville, PA, between July 8 and October 28, 1986. We affirm.

On December 5, 1988, Ratepayer filed an informal complaint with the PUC pursuant to the PUC's regulation at 52 Pa.Code § 56.162 and averred a billing dispute with Duquesne for electric service provided to 127 Monticello Drive, Monroeville between July 8 and October 28, 1986. In accordance with 52 Pa.Code § 56.163, the PUC's Bureau of Consumer Services notified Duquesne of the filing of Ratepayer's informal complaint. The PUC's Bureau of Consumer Services then investigated the billing dispute matters raised in Ratepayer's informal complaint. On January 24, 1990, the PUC's Bureau of Consumer Services sent Ratepayer and Duquesne a report which included factfindings and a decision in favor of Duquesne.

On October 2, 1990, Ratepayer filed a formal complaint against Duquesne with the PUC and asserted that he was not the party obligated to pay for electric service to 127 Monticello Drive, Monroeville, between July 8 and October 28, 1986. In accordance with the PUC's regulation at 52 Pa.Code § 5.21(c),

the PUC served a copy of Ratepayer's formal complaint upon Duquesne. In its answer to the formal complaint, Duquesne asserted two defenses: (1) that Ratepayer's formal complaint was barred by the statute of limitations at 66 Pa.C.S. § 3314(a) and (2) that Ratepayer was estopped from protesting the bills that accumulated between July 8 and October 28, 1986 because Ratepayer had allegedly waited until October 27, 1986 to request Duquesne's termination of electric service in Ratepayer's name at 127 Monticello Drive, Monroeville.

A hearing on the formal complaint and answer thereto was held before a PUC administrative law judge (ALJ). Ratepayer presented evidence that, pursuant to an Allegheny County common pleas court order, he vacated the property at 127 Monticello Drive on July 9, 1986 and did not return to that property until December of 1987. Ratepayer testified that on or about July 9, 1986, he called Duquesne to request termination of electric service in his name at 127 Monticello Drive. Ratepayer further testified that, after he continued to receive electric bills from Duquesne, he wrote to Duquesne on October 24, 1986 to state that he was not responsible for paying such bills at 127 Monticello Drive. Duquesne acknowledged that, on October 27, 1986, it received Ratepayer's October 24 letter and terminated service in Ratepayer's name at 127 Monticello Drive. However, Duquesne presented evidence to dispute its receipt of Ratepayer's July 9, 1986 call to terminate service in Ratepayer's name.

On April 10, 1991, the ALJ issued an initial decision which sustained Ratepayer's complaint and held that Ratepayer was not responsible for payment of Duquesne electric service at 127 Monticello Drive, Monroeville, between July 8, 1986 and October 28, 1986. The initial decision was expressly premised (1) on the ALJ's finding that, on or about July 9, 1986, Ratepayer had telephoned Duquesne to terminate service in his name at 127 Monticello Drive and (2) on the ALJ's conclusion that Ratepayer's October 2, 1990 formal complaint was filed within the three-year statute of limitations in subsection 3314(a) of the Public Utility Code, 66 Pa.C.S. § 3314(a).

Duquesne filed timely exceptions to the ALJ's initial decision. On August 20, 1991, the PUC entered an opinion and order which denied Duquesne's exceptions, adopted the ALJ's initial decision, and sustained Ratepayer's complaint. Thereafter, Duquesne filed a petition for commonwealth court review of the PUC's August 20 order.

Two issues are presented on appeal [1]: (1) whether Ratepayer's October 2, 1990 formal complaint was filed within the three-year statute of limitations in subsection 3314(a) of the Public Utility Code and (2) whether substantial evidence of record supports the PUC's finding that Ratepayer contacted Duquesne on or about July 9, 1986 to terminate electric service in his name at 127 Monticello Drive.

Subsection 3314(a) of the Public Utility Code states that "no prosecutions on account of any matter . . . shall be maintained unless brought within three years from the date at which the liability therefor arose. . . ."

 Ratepayer filed his informal complaint with the PUC on December 5, 1988, which was the 769th day after October 28, 1986.[2] Therefore, the informal complaint was undeniably

---

1. In appeals from PUC orders, our scope of review is limited to ascertaining whether an error of law has been committed, constitutional rights have been violated, or necessary findings of fact and conclusions of law are unsupported by substantial evidence of record. *Barasch v. Pennsylvania Public Utility Commission*, 507 Pa. 561, 493 A.2d 653 (1985); *Vacation Charters, Ltd. v. Pennsylvania Public Utility Commission*, 133 Pa.Commonwealth Ct. 179, 575 A.2d 640 (1990).

2. The PUC determined that October 28, 1986 is the proper starting point for computing the expiration of the three-year statute of limitations period because October 28, 1986 is the last date of the disputed billing period. Duquesne asserts that July 9, 1986 should be used as the starting point for computing the expiration of the three-year statute of limitations period because that was the date on which Ratepayer claimed to have first sought Duquesne's termination of service in Ratepayer's name at 127 Monticello Drive. We accept the PUC's October 28, 1986 starting point and reject Duquesne's proposed July 9, 1986 starting point. On July 9, Ratepayer was unaware that he would have a billing dispute with Duquesne inasmuch as that was the day on which Ratepayer first requested service termination in his name and at that time, Ratepayer expected that Duquesne would comply with his request. The last day on which liability for disputed utility service arose in this case was October 28, 1986, and October 28 is therefor the

filed within the three-year (1,095–day) statute of limitations of subsection 3314(a), and the PUC so held.

In determining whether Ratepayer's October 2, 1990 formal complaint was also filed within the three-year statute of limitations, the PUC did not attribute to Ratepayer the length of time during which the PUC's Bureau of Consumer Services considered Ratepayer's informal complaint. Because Ratepayer's informal complaint was filed on December 5, 1988 and the Bureau of Consumer Services rendered its informal complaint report on January 24, 1990, the PUC reasoned that the period from December 6, 1988 to January 23, 1990 should not be included in the calculation of the three-year statute of limitations period applicable to the filing of Ratepayer's formal complaint.

The PUC held that as of January 24, 1990, Ratepayer had 326 days remaining within the three-year statute of limitations period computed from October 28, 1986. Ratepayer filed his formal complaint on October 2, 1990, which was the 244th day of the 326–day remaining statute of limitations period. Accordingly, the PUC concluded that Ratepayer's formal complaint was timely filed within the three-year statute of limitations period set forth in 66 Pa.C.S. § 3314(a).

We agree with the PUC's analysis. Ratepayer should not have charged against him the period of time within which the PUC's Bureau of Consumer Services investigated Ratepayer's informal complaint. This analysis is consistent with the PUC's regulations which state that a ruling on an informal complaint is without prejudice to the complainant's right to file and prosecute a formal complaint.[3] *See, e.g.,* 52 Pa.Code

proper point from which to compute the expiration of the three-year statute of limitations.

3. Contrary to Duquesne's assertion, section 5535 of the Judicial Code, 42 Pa.C.S. § 5535, is not germane to a resolution of the present case. Section 5535 governs the termination of civil actions in Pennsylvania's unified judicial system which consists solely of courts and district justices in Pennsylvania. 42 Pa.C.S. § 301 (unified judicial system defined). Section 5535 does not pertain to any tribunal, such as the PUC, which exists outside the unified judicial system. *Pennsylvania*

§ 56.173 (a formal complaint is heard de novo despite the existence of a ruling on a prior, related informal complaint); *see also* 52 Pa.Code § 3.112(b). Furthermore, this analysis is consistent with the purpose underlying the informal complaint procedure which is to encourage settlements of utility billing disputes. *See* 52 Pa.Code § 56.163(2). If the ability of a complainant to file a timely formal complaint were jeopardized by having attributed to him the length of time necessary for the PUC's Bureau of Consumer Services to resolve the complainant's informal complaint, a complainant would be reluctant to utilize the informal complaint procedure, and the efficacy of that procedure would be severely undermined.

■ Having held that Ratepayer's formal complaint was timely filed, the PUC sustained Ratepayer's complaint based on (1) its finding that Ratepayer had telephoned Duquesne on or about July 9, 1986 to request termination of electric service in his name at 127 Monticello Drive and (2) its corresponding determination that Ratepayer was not obligated to pay for electric service to 127 Monticello Drive between July 8, 1986 and October 28, 1986.[4] Duquesne contends that substantial evidence of record does not support the PUC's finding that, on or about July 9, 1986, Ratepayer notified Duquesne to terminate service in his name at 127 Monticello Drive.

■ The credibility of the evidence presented and the weight to be accorded to it are for the PUC to assess as the factfinder. *W.C. McQuaide, Inc. v. Pennsylvania Public Utility Commission,* 137 Pa.Commonwealth Ct. 282, 585 A.2d 1151 (1991). Our function in reviewing a PUC order is not to "indulge in the process of weighing evidence and resolving conflicts but [to] defer to the PUC's determinations as factfinder unless they are not supported by substantial evidence."

*Board of Probation and Parole v. Baker,* 82 Pa.Commonwealth Ct. 86, 474 A.2d 415 (1984).

4. As a result of Duquesne's admission of its October 27, 1986 receipt of written notice from Ratepayer to terminate service in his name at 127 Monticello Drive, Duquesne concedes that Ratepayer was not responsible for paying electric service bills at 127 Monticello Drive after October 27, 1986. January 22, 1991 Hearing before ALJ, Tr. 16 and R. 41a; Duquesne's Appellate Brief *passim.*

*Id.,* 137 Pa.Commonwealth Ct. at 290, 585 A.2d at 1155. Substantial evidence is the "relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached." *Id.,* 137 Pa.Commonwealth Ct. at 289, 585 A.2d at 1155.

At the January 22, 1991 hearing before the ALJ, Ratepayer testified as follows:

> Well, in July of 1986, I had a separation from the party that I was living with at 127 Monticello Drive and entered into an agreed order which is here dated 9 July 1986. In that order on page three, it was agreed that I would be responsible to pay the utilities up to July 2, 1986 and that was the end of my obligation to pay. The other party, who was going to remain in the said house thereafter, would be responsible. After we had agreed to this Judge Kaplan [of the Court of Common Pleas of Allegheny County] signed it. . . .

> I called Duquesne Light and told them that I was no longer residing at that residence. . . . I thought that was the end of it.

> They've been billing me for July, August, September and October of 1986 which I wasn't responsible for and which I had no use of their facilities. I had no trouble with any other utility company or the telephone company except Duquesne Light. . . .

> On July 8 of 1986, prior to this order of the court of July 9, I was no longer residing at that house for probably two weeks. I remember telling my secretary to pay the bill up in full and that I would no longer be using the premises. That was the date that the phone call was made to Duquesne Light that I would not be responsible to pay it anymore.

Tr. at 8–10, 29–30 and R. 33a–35a, 44a–45a.

We conclude that Ratepayer's above-quoted testimony constitutes substantial evidence which supports the PUC's finding that, as of July 9, 1986, Duquesne had been advised by

Ratepayer to terminate electric service in his name at 127 Monticello Drive.

Accordingly, the PUC's order is affirmed.

## ORDER

AND NOW, June 5, 1992, the order of the Pennsylvania Public Utility Commission in the above-captioned case is hereby affirmed.