**ENERGY PIPELINE, INC. and Energy Production Company, Petitioners,**

v.

**PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1999.
Decided March 17, 1999.

Dennis S. Shilobod, Pittsburgh, for petitioners.

Wayne T. Scott, Harrisburg, for respondent.

Before COLINS, President Judge, and FRIEDMÁN, J., and NARICK, Senior Judge.

COLINS, President Judge.

Before the Court is the appeal of Energy Pipeline, Inc. and Energy Production Company (collectively, Energy Pipeline) to the decision of the Pennsylvania Public Utility Commission (PUC). The PUC denied Energy Pipeline's Application for Attorney's Fees and Costs pursuant to the Administrative Agency Actions Act (Costs Act).[1] We affirm.

The relevant facts are as follows.[2] On January 26, 1984, Energy Pipeline entered into an agreement to supply natural gas to Bethlehem Steel Corporation (Bethlehem). Pursuant to this agreement, Energy Pipeline was to construct a 21-mile pipeline between its gas fields and Bethlehem's plant. On June 7, 1984, a joint venture named Bessie 8 was formed between Energy Pipeline and other entities for the sole purpose of providing natural gas service to Bethlehem. Bethlehem was Bessie 8's only customer.

No participant in the Bessie 8 joint venture filed a certificate of public convenience with the PUC.[3] On October 17, 1985, Peoples Natural Gas Company (Peoples), a company which also supplied natural gas to Bethlehem, filed a complaint with the PUC alleging that Bessie 8 was operating as a public utility without a certificate of public convenience by supplying natural gas to Bethlehem.[4]

---

1. Act of December 13, 1982, P.L. 1127, *as amended*, 71 P.S. §§ 2031–35.

2. A more comprehensive recitation of the facts underlying the present case can be found in *Bethlehem Steel Corp. v. Pennsylvania Pub. Util. Comm'n*, 552 Pa. 134, 713 A.2d 1110 (1998) (*Bethlehem II*) and in *Bethlehem Steel Corp. v. Pennsylvania Pub. Util. Comm'n*, 680 A.2d 1203 (Pa.Cmwlth.1996) (*Bethlehem I*).

3. Section 1101 of the Public Utility Code, 66 Pa.C.S. § 1101, requires public utilities to apply for certificates of public convenience prior to furnishing public utility service within the Commonwealth.

4. Pursuant to Section 701 of the Public Utility Code, 66 Pa.C.S. § 701, the PUC is empowered to adjudicate complaints brought by any person or utility regarding "any act or thing done or

The matter was assigned to an Administrative Law Judge (ALJ) who dismissed Peoples' complaint, finding that Bessie 8 was not a public utility subject to PUC regulation. Peoples then filed exceptions to the ALJ's decision on May 16, 1988. After its initial review of Peoples' exceptions on or around April 6, 1989, the four-member PUC was deadlocked as to whether Bessie 8 was a public utility. For approximately three and a half years thereafter, Peoples' exceptions remained dormant, until, the PUC, acting pursuant to its own initiative, again considered the exceptions. At this juncture, Peoples' exceptions garnered the favorable vote of a majority of the PUC members; the PUC held that Bessie 8 was a public utility. Thus, the PUC ordered Bessie 8 to file an application for a certificate of public convenience within thirty days.

Energy Pipeline appealed the PUC's decision to this Court, which affirmed. *Bethlehem I*. Energy Pipeline then appealed to the Pennsylvania Supreme Court, which ultimately reversed, and dismissed Peoples' complaint against Bessie 8. *Bethlehem II*. The Supreme Court held that Bessie 8 was not a public utility subject to PUC oversight.

On July 16, 1998, Energy Pipeline filed an Application for Attorney's Fees and Costs with the PUC citing the Costs Act. In its application, Energy Pipeline alleged that the PUC initiated an adversary adjudication against Bessie 8 and that the PUC's position therein was not substantially justified. The PUC denied Energy Pipeline's application, holding that the PUC did not initiate the proceeding as alleged by Energy Pipeline and as required by the Costs Act. The PUC further held that its position was substantially justified, and therefore, that Energy Pipeline was barred from recovering fees and

omitted to be done by any public utility in violation, or claimed violation, of any law which the commission has jurisdiction to administer, or of any regulation or order of the commission."

**5.** This Court granted Energy Pipeline's Petition for Leave to Appeal by per curiam order dated October 14, 1998.

**6.** We may reverse a PUC decision where petitioner demonstrates a violation of constitutional

expenses despite its eventual success before the Supreme Court.

■ Energy Pipeline now appeals to this Court reiterating the arguments it presented before the PUC.[5] Essentially, Energy Pipeline maintains that the PUC erred as a matter of law in denying its application for fees and expenses. We will reverse the PUC's decision here only if Energy Pipeline can demonstrate to our satisfaction that the PUC committed an error of law in denying its application.[6] Since Energy Pipeline has failed to establish that the PUC's decision is not in accordance with the law of the Commonwealth, we affirm.

The disposition of this matter hinges squarely on interpreting the relevant Costs Act provisions. The section of the Costs Act specifically at issue here provides:

> Except as otherwise provided or prohibited by law, a Commonwealth agency that *initiates an adversary adjudication* shall award to a prevailing party, other than the Commonwealth, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer finds that the position of the agency, as a party to the proceeding, *was substantially justified* or that special circumstances make an award unjust.

Section 3(a), 71 P.S. § 2033(a) (emphasis added). In support of its appeal, Energy Pipeline contends that it is entitled to recover its fees and expenses because the present case meets the two requirements of the above-referenced provision. First, Energy Pipeline argues that the PUC "initiate[d] an adversary adjudication" in which Energy Pipeline ultimately prevailed. Second, Energy Pipeline argues that the PUC's position throughout the underlying litigation was not "substantially justified."[7]

rights, an error of law or lack of substantial evidence to support the PUC's findings of fact. *W.C. McQuaide, Inc. v. Pennsylvania Pub. Util. Comm'n*, 137 Pa.Cmwlth. 282, 585 A.2d 1151, 1154 (1991).

**7.** Since Energy Pipeline has failed to establish that the PUC initiated the underlying action, we need not reach the merits of its second contention.

Energy Pipeline's initial argument focuses on the phrase "initiates an adversary adjudication." In focusing on this language, Energy Pipeline asserts two arguments in support of its position that the PUC initiated an adversary adjudication. Primarily, Energy Pipeline contends that the PUC initiated an adversary adjudication by granting Peoples' exceptions and in finding that Bessie 8 was a public utility. Additionally, Energy Pipeline advances a secondary argument that the PUC initiated an adversary adjudication by reconsidering, upon its own initiative, Peoples' exceptions. Neither of these arguments has convinced us that the PUC initiated an adversary adjudication in accordance with our understanding of the Costs Act.

█ To support its argument that the PUC initiated an adversary adjudication by granting Peoples' exceptions, Energy Pipeline advocates an extremely nearsighted reading of the Costs Act and exaggerates the significance of the word adjudication in the relevant provision. Energy Pipeline believes that the "initiates an adversary adjudication" language should be read to mean the commencement of the actual adjudication, i.e., the commencement of the agency's decision. Thus, Energy Pipeline feels that an agency can be held liable for fees and expenses because of its actions as an adjudicator. In Energy Pipeline's words, "[i]t is in the *decision making* that the administrative agency is being held to a certain standard by the legislature." (Energy Pipeline's Brief, p. 7.) Under Energy Pipeline's reading of the Costs Act, agencies are liable for fees and expenses to parties that ultimately prevail on appeal from agency adjudications that were not substantially justified.

█ The specific language "initiates an adversary adjudication" supports Energy Pipeline's argument only when it is viewed in the myopic fashion espoused by Energy Pipeline. However, when this phrase is examined in reference to the entire provision in which it is contained, and in light of the Costs Act as a whole, it is clear to this Court that the possibility of an award of fees and expenses was only envisioned when adversary actions or proceedings are commenced by administrative agencies. The General Assembly never intended to allow for the possibility of an award of fees and expenses when agencies adjudicate controversies brought by third parties.

To begin, when examining the entire provision it is clear that the possibility of recovering fees and expenses was meant to arise only when the agency initiates the action or proceeding, not when an agency adjudicates a controversy commenced by a third party. After empowering a prevailing party to recover fees, the provision is qualified as such: "unless the adjudicative officer finds that the position of the agency, as a party to the proceeding, was substantially justified or that special circumstances made an award unjust." Section 3(a) of the Costs Act, 71 P.S. § 2033(a). The language "as a party to the proceeding" clearly envisions the agency as an adversarial party in a proceeding, not as the neutral adjudicator called on to decide a controversy brought by a third party. An award of fees and expense under the Costs Act presupposes that an agency actually initiated the adverse action or proceeding. Consequently, there is no possibility of recovering fees and expenses where, as here, the agency simply adjudicates a complaint that was commenced by a third party.

In addition, Energy Pipeline's reading of the "initiates an adversary adjudication" language is clearly at odds with the stated purpose of the Costs Act. Section 1(c)(2) of the Costs Act, 71 P.S. § 2031(c)(2), is captioned: "Findings and purpose," and it sets out the purpose of the act, which is, in part, to: "[d]eter the administrative agencies of this Commonwealth from initiating substantially unwarranted actions against individuals, partnerships, corporations, association and other nonpublic entities." (emphasis added). Therefore, the purpose of the act is to punish agencies that bring unwarranted actions or proceedings, not to punish agencies for their erroneous adjudications, as argued by Energy Pipeline.

It is also telling to the weakness of Energy Pipeline's argument that what it is attempting to accomplish in its application for fees and expenses is well beyond the scope of the Costs Act. Energy Pipeline requested over $600,000 in attorney's fees and expenses in

its application; however, the Costs Act provides for a maximum recovery of $10,000. Section 2, 71 P.S. § 2302; *Pennsylvania Department of Environmental Resources v. McDonald Land & Mining Co.,* 664 A.2d 190, 193 n. 10 (Pa.Cmwlth.1995). While the statute places a $10,000 ceiling on the amount of fees and expenses recoverable, Energy Pipeline's application contemplates a recovery of sixty times that amount. Furthermore, the Costs Act strictly limits recovery of fees and expenses to parties who can establish that their net worth does not exceed certain thresholds. Section 2, 71 P.S. § 2032.[8] In sum, the Costs Act has a much narrower applicability than Energy Pipeline believes.

Moreover, in deciding cases where the Costs Act did apply, this Court has liberally construed the phrase "initiates an adversarial adjudication" in awarding fees and expenses. *See McDonald,* 664 A.2d 190 (Pa.Cmwlth. 1995) (holding that denial of mining company's bond release and issuance of compliance order constituted adversary adjudications); *West v. Western Center, Department of Public Welfare,* 163 Pa.Cmwlth. 315, 641 A.2d 41 (1994) (finding that agency initiated an adversary adjudication by demoting employee); *Department of Environmental Resources v. Oermann,* 158 Pa.Cmwlth. 560, 632 A.2d 603 (1993) (holding that assessment of civil fine is adversary adjudication); *Joyner v. Department of Environmental Resources,* 152 Pa. Cmwlth. 441, 619 A.2d 406 (1992), *petition for allowance of appeal denied,* 535 Pa. 640, 631 A.2d 1011 (1993) (same); *Kealy v. Pennsylvania Liquor Control Board,* 106 Pa.Cmwlth. 527, 527 A.2d 586 (1987) (same as *West*). However, we have located no caselaw, nor has Energy Pipeline cited any, to support an award of fees and expenses under the Costs

Act by virtue of an agency's adjudication of a proceeding initiated by a third party. In the cases we have reviewed, the common denominator has been that the party awarded fees and expenses has been forced into litigation by the actions of an agency, not a third party.

For example, in *Staub v. Department of State, State Registration Board for Professional Engineers, Land Surveyors and Geologists,* 710 A.2d 137 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* — Pa. —, — A.2d —, 1998 WL 735344 (No. 536 M.D. Alloc. Dkt.1998, filed Oct. 19, 1998), this Court held that a state agency initiated an adversary adjudication when it brought an order to show cause why petitioner should not be found to be in violation of a the Engineer, Land Surveyor, and Geologist Registration Law (Law).[9] In *Staub,* the petitioner was accused of reviewing the work of another engineer without that engineer's knowledge, a violation of the Law. The Registration Board for Professional Engineers, Land Surveyors and Geologists (Board) brought an order to show cause why petitioner should not be found in violation of the Law. A hearing examiner eventually dismissed the charges when the Board could not establish a prima facie case. Petitioner then applied for an award of fees and expenses under the Cost Act, which the Board denied. On appeal to this Court, we granted petitioner's application for fees and expenses finding that the Board initiated an adversary adjudication by bringing the order to show cause and that such order was not substantially justified because the Board could not establish a prima facie case of a violation of the law. In addressing the issue of whether the issuance of an order to show cause constituted the initiation of an adversary adjudication,

---

**8.** Section 3 of the Costs Act, 71 P.S. § 2033, requires that the applicant include in its application for fees and expenses a showing that it is a party eligible for an award. In addition, the definitions section of the Cost Act, Section 2, 71 P.S. § 2032, defines "Party" as excluding, *inter alia,* "[a]ny ... corporation ... whose net worth exceeded $2,000,000 at the time the adversary adjudication was initiated." We must note that Energy Pipeline's application is defective because it fails to include a showing that it is an eligible party. Moreover, although the record is unclear as to the net worth of Energy Pipeline or

the other entities involved in the Bessie 8 joint venture, we would be surprised if these parties had a net worth of less than $2,000,000, yet incurred legal fees in excess of $600,000. In sum, although we chose not to dispose of this case on this issue, it is unlikely that Energy Pipeline even qualifies as an eligible party under the Costs Act.

**9.** Act of May 23, 1945, P.L. 913, *as amended,* 63 P.S. §§ 148–158.2.

this Court stated, "[t]o the extent that [petitioner] was placed in the position of defending himself against the foregoing charges, it can be said that an 'adversary adjudication' against him was initiated by the Board." *Id.* at 140.

The present case is dissimilar to those cases in which this Court has held that an agency initiated an adversary adjudication, and we find that the Costs Act is simply inapplicable here. Bessie 8 was not placed in the position of defending itself by the PUC, but was placed in that position by Peoples' complaint. Despite the use of the word adjudication in the relevant language, the Costs Act does not apply when an agency adjudicates a matter initiated by a third party, and for good reason. To permit possible recovery of fees and expenses against an administrative agency every time it adjudicates a controversy brought by a third party would undoubtedly have a chilling affect on the agency's willingness to fulfill its legislatively-mandated duty to resolve such controversies.

■ As for Energy Pipeline's secondary argument regarding the PUC's purported initiation of an adversary proceeding, we find that Energy Pipeline's argument here is also unconvincing. Subsumed within its primary argument that the PUC initiated an adversary adjudication by granting Peoples' exceptions, Energy Pipeline seems to be arguing that the PUC initiated an adversary adjudication by reconsidering Peoples' exceptions upon its own initiative. In other words, the PUC initiated the adjudication because it chose to readdress the exceptions after they had been dormant for three and a half years.

When Peoples' exceptions were originally addressed, the PUC was split as to whether Bessie 8 was a public utility. Since the PUC could not reach a majority vote either for or against Peoples' exceptions, no action was taken at that point. *Bethlehem Steel II.* During the intervening time period, the exceptions remained pending until the PUC finally held that Bessie 8 was a public utility. Thus, the PUC did not initiate an adversary adjudication by reconsidering Peoples' exceptions upon its own motion; instead, the PUC resolved an outstanding controversy pursuant to its legal obligation. Therefore, for the reasons elucidated fully above, the PUC did not initiate an adversary adjudication by addressing Peoples' exceptions.

Accordingly, the decision of the PUC is affirmed.

## *O R D E R*

AND NOW, this 17th day of March 1999, the order of the Public Utility Commission in the above-captioned matter is affirmed.