**Mark B. ARONSON, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 1, 1999.

Decided Nov. 16, 1999.

---

Mark B. Aronson, petitioner, pro se.

Rhonda L. Daviston, Harrisburg, for respondent.

Before McGINLEY, J., KELLEY, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Mark B. Aronson (Aronson) appeals pro se from an order of the Pennsylvania Public Utility Commission (PUC) that dismissed his formal complaint against The Peoples Natural Gas Company (Peoples), determining that (1) Peoples' utility charges are exempted from the disclosure requirement under the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1667f, and (2) the public utility services provided by Peoples were adequate and reasonable under Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501.

The relevant facts found by the administrative law judge (ALJ) and adopted by the PUC are as follows. Peoples provides natural gas utility services in Pennsylvania. On or about August 21, 1997, Peoples sent Aronson a gas bill, listing an account balance of $557.36 and an optional payment amount of $113. The bill stated, "Please Pay By Sep 11, 1997 To Avoid A Late Payment Charge Of $6.57 (1.5%)." On the reverse side of the bill, Peoples explained the "Optional Payment Plan" as follows: "This plan lets you spread payments over the entire year. Each month you have a choice of paying the Account Balance or the Optional Payment Amount. All residential customers are eligible." The bill further stated: "A late payment charge is added to your bill if either the Account Balance or the Optional Amount is not paid by the 'Please Pay By' date. The charge is 1½% of the amount you owe." Aronson paid neither the total account balance nor the optional payment amount by September 11, 1997.

On September 23, 1997, Peoples sent Aronson a gas bill for the following month. The bill listed a new account balance of $586.44 (new service charges of $22.51 + the unpaid balance of $557.36 + a late payment charge of $6.57) and an optional payment amount of $206.57, and stated, "Please Pay By Oct 14, 1997 To Avoid A Late Payment Charge of $6.91 (1.5%)."

On September 29, 1997, Aronson remitted the optional payment amount of $113 listed in the August bill, which was received at Peoples' bill payment center in Baltimore, Maryland on October 3, 1997.

Peoples' employee reviewing the payment history of an account on a particular day does not have updated information regarding payments received earlier that day. As a result, Peoples sent Aronson a ten-day turn-off notice on October 3, 1997, stating that Peoples planned to turn off the gas service upon Aronson's failure to pay the overdue amount listed in the August bill by October 16, 1997. The bill further stated that Peoples would not turn off the service if Aronson, *inter alia*, called Peoples at the toll-free number listed in the notice to make payment arrangements or dispute the bill. Finally, the notice stated: "AFTER you talk with us, if you are not satisfied, you may file a complaint with the Pennsylvania Utility Commission (PUC). The PUC will delay the turn-off if you file the complaint *before* the turn off date." (Emphasis in original.)

On October 8, 1997, Aronson called Peoples and was told by Peoples' employee to disregard the turn-off notice. The employee stated that Aronson's payment was received on October 3, 1997, that his account was current as of October 3, 1997, and that his payment and the turn-off notice must have crossed in the mail. On October 10, 1997, Aronson filed pro se a formal complaint with the PUC, alleging that in issuing the monthly billing statements, Peoples failed to comply with TILA which requires disclosure of the consumer credit costs, and that Peoples' billing practice and the turn-off notice do not comply with Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501, which provides in relevant part that "[e]very public utility shall furnish and maintain adequate, efficient, safe, and reasonable service ...."

■ Relying on the previous initial decision of an ALJ in the proceeding involving Aronson's similar challenge to the monthly billing statements of the Bell of Pennsylvania, the ALJ concluded that the PUC lacks subject matter jurisdiction over the issue of Peoples' alleged violation of TILA because Peoples' utility charges are exempted from the disclosure requirement under TILA. The ALJ further concluded that Aronson failed to establish that the utility services provided by Peoples were inadequate and unreasonable. The ALJ accordingly recommended that Aronson's formal complaint be denied. The PUC subsequently denied Aronson's exceptions to the ALJ's initial decision and dismissed the formal complaint. Aronson's appeal to this Court followed.[1]

Aronson first contends that in the monthly billing statements, Peoples failed to list the specific due date, the annual percentage rate for late payment charges, the total amount from which the late payment charges are computed, and the method of computing those charges, in violation of TILA.

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). To achieve the stated purposes, TILA requires lenders to disclose, *inter alia*, the annual percentage rate, the method of calculating the finance charge, the balance upon which the finance charge will be imposed, the amount of finance charge, and the due date or periods of payments scheduled to repay the indebtedness. 15 U.S.C. §§ 1602(a), 1605, 1606 and 1638(a).

In imposing the disclosure requirement on lenders, however, TILA specifically exempts, *inter alia*, "[t]ransactions under public utility tariffs, if the [Federal Re-

1. This Court's scope of review of the PUC's decision is limited to determining whether the PUC violated constitutional rights or committed an error of law, or whether its findings are supported by substantial evidence in the record. *Loma, Inc. v. Pennsylvania Public Utility Commission*, 682 A.2d 424 (Pa. Cmwlth.1996), *appeal denied*, 548 Pa. 675, 698 A.2d 597 (1997).

serve] Board determines that a State regulatory body regulates the charges for the public utility services involved, the charges for delayed payment, and any discount allowed for early payment." 15 U.S.C. § 1603(4). Pursuant to the authority granted by TILA, the Federal Reserve Board subsequently promulgated the regulations exempting certain transactions from the disclosure requirement, including:

> (c) *Public utility credit.* An extension of credit that involves public utility services provided through pipe, wire, other connected facilities, or radio or similar transmission (including extension of such services), if the charges for service, delayed payment, or any discounts for prompt payment are filed with or regulated by any government unit. The financing of durable goods or home improvements by a public utility is not exempt.

12 CFR § 226.3(c).

■ In Pennsylvania, every public utility is required to file with the PUC "tariffs showing all rates established by it and collected or enforced, or to be collected or enforced, within the jurisdiction of the [PUC]." Section 1302 of the Public Utility Code, *as amended,* 66 Pa.C.S. § 1302. Further, the PUC regulations extensively regulate public utility services, including information to be included in the billing statements, the late payment charges to be imposed, and the resolution of disputes between the public utility and its customers. Hence, Peoples' utility charges are exempted from the disclosure requirement under TILA and 12 CFR § 226.3(c).[2] *See also Ferguson v. Electric Power Board of Chattanooga,* 378 F.Supp. 787 (E.D.Tenn. 1974), *aff'd,* 511 F.2d 1403 (6th Cir.1975) (the late charges imposed in public utility bills are specifically exempted from the disclosure provision of TILA).

Aronson next contends that even if Peoples' utility charges are exempted by TILA and 12 CFR § 226.3(c), Peoples must still disclose the information listed in TILA to provide adequate and reasonable services required by Section 1501 of the Public Utility Code.

■ As the party filing a formal complaint with the PUC, Aronson had the burden of establishing that Peoples failed to provide adequate and reasonable services. Section 332(a) of the Public Utility Code, *as amended,* 66 Pa.C.S. § 332(a). In reviewing the PUC's decision, this Court must defer to the interpretation of the governing statutes, regulatory pronouncements and terms of the tariffs rendered by the PUC that has the particular expertise over public utility matters. *Springfield Township v. Pennsylvania Public Utility Commission,* 676 A.2d 304 (Pa.Cmwlth.1996); *W.C. McQuaide, Inc. v. Pennsylvania Public Utility Commission,* 137 Pa.Cmwlth. 282, 585 A.2d 1151 (1991).

The PUC regulations at 52 Pa.Code §§ 64.11–64.22 contain the specific payment and billing standards which all public utilities are required to comply. Under the regulations, public utilities are permitted to assess "a late charge or penalty on any overdue bill" in an amount not exceeding "1.5% interest per month on the full unpaid and overdue balance of the bill." 52 Pa.Code § 56.22(a). Peoples' tariff approved by the PUC provides in relevant part:

> A bill will be rendered as nearly as possible on the same day every month and shall be payable upon presentation. A bill shall be deemed delinquent if it is not paid by the due date. The due date for residential and commercial ratepayers shall be twenty (20) days after the

**2.** In *Aronson v. Peoples Natural Gas Co.,* 180 F.3d 558 (3rd Cir.1999), a separate action filed by Aronson against Peoples, the United States Court of Appeals for the Third Circuit rejected Aronson's argument that TILA does not authorize the Federal Reserve Board to make a blanket exemption for public utilities and that the Federal Reserve Board must make an affirmative individualized determination that the state agency regulates utility charges before such charges become exempt from TILA.

date of mailing the bill unless the Company agrees to an extension. Delinquent residential accounts shall be subject to a late-payment charge of one and one-half percent (1½) per month for bills not paid within five days after the due date.

Peoples' Tariff, p. 26.

■ In the monthly billing statements, Peoples clearly instructed its customers, in customer-friendly language, to pay either the account balance or the optional payment amount by a certain date to avoid a specified amount of a late payment charge calculated at the monthly percentage rate of 1.5%. Peoples' monthly billing statements thus contained all the information required by the regulations and the tariff approved by the PUC, including the due date, the late payment charge rate and the amount from which the late charge is computed. Moreover, the PUC approved the specific language used in Peoples' monthly billing statements under the detailed "plain language" guidelines set forth in 52 Pa.Code § 69.251.

In addressing Aronson's argument that the "please-pay-by" date in the bills is not a due date, that his account therefore can never become "overdue," and that he may elect to have the late payment charge added to the outstanding balance without paying either the total account balance or the optional payment amount, the ALJ stated:

> [P]erhaps it requires someone with the training and intelligence of Mr. Aronson to tell the difference,[3] but I believe that this Commission is correct in assuming that most members of the population of ratepayers, particularly those not trained in the finer points of legal drafting, would understand please pay by a

certain date to mean that certain date is the date payment due. Further, the language concerning the application of a late payment charge at the very least infers that failure to pay the certain date will result in the imposition on [sic] an additional charge. And just what is that additional charge? Why it is 1.5% of the amount that should have been paid.

The ALJ's Initial Decision, p. 14. We agree with the ALJ's reasoning and conclude that Peoples' monthly billing statements complied with the applicable regulations, the tariff and the PUC's plain language guidelines and, therefore, constitute adequate and reasonable services under Section 1501 of the Public Utility Code.[4]

Aronson further contends that the issuance of the turn-off notice on October 3, 1997 was improper because under the tariff, his payment should be deemed to have been made on September 29, 1997, the date of the postmark on the remittance of the payment. The ALJ found, however, that Peoples' employee reviewing the payment history on Aronson's account on October 3, 1997 did not have updated information regarding the receipt of his payment earlier that day. Moreover, Peoples never acted on the turn-off notice. As the ALJ stated:

> Mr. Aronson's claim that Peoples' issuance of a shut off notice is in some way an actionable violation is in error. Mr. Aronson chose the time to make his payments. The fact that his payment was technically received at or about the same time as the notice was being issued points out the impossibly high standard he wants Peoples to meet. It is important to notify customers that payment has not been received in a timely fashion

---

3. In his written sworn testimony submitted at the hearing, Aronson described his educational background, which included graduation from a business school and a law school.

4. At the hearing, Peoples' witness stated that Peoples was considering addition of the language, "without past late payment charges," in explaining the late payment charge in the

monthly billing statement, to clarify that the late charge is calculated at the rate of 1.5% of the owed amount, not including past late charges. Peoples' willingness to improve the billing statement, however, does not establish that the current monthly billing statements are inadequate and unreasonable.

so that if an oversight has occurred it can be corrected before any significant arrearage has accumulated.

The ALJ's Initial Decision, pp. 25–26.

■ Finally, Aronson asserts that Peoples improperly required the customers to talk to Peoples before filing a complaint with the PUC. The PUC regulations, however, require the public utilities to attempt to resolve disputes with the customer before an informal or formal complaint is filed with the PUC. The regulations at 52 Pa.Code § 56.141(1) provide:

### § 56.141 Dispute procedures.

A notice of dispute, including termination disputes, shall proceed in the first instance, according to this section:

(1) *Attempted resolution.* If, at any time prior to the actual termination of service, a ratepayer advises the utility that he disputes any matter covered by this chapter, including but not limited to credit determinations, ... the accuracy of utility metering and billing ..., the utility shall attempt to resolve the dispute in accordance with § 56.151 (relating to general rule).

Moreover, the language used by Peoples in the turn-off notice complies with 52 Pa.Code § 56.2, which requires the termination notice to include, in conspicuous print, the following statement: "If, AFTER discussing your problem with the Utility you remain dissatisfied, you may file an informal complaint with the Public Utility Commission." We therefore reject Aronson's challenge to the turn-off notice.[5]

Accordingly, the order of the PUC is affirmed.

### ORDER

AND NOW, this 16th day of November, 1999, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.

---

5. Aronson argues, without citing any supporting authority, that this Court should report *all* decisions. Suffice it to note that a decision of whether to publish an opinion is up to this Court's discretion and does not implicate a constitutional right to due process, as Aronson asserts.