**PHILADELPHIA GAS WORKS on its own behalf and by the Philadelphia Facilities Management Corporation, Petitioners**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 4, 2006.

Decided May 5, 2006.

Mark S. Stewart, Harrisburg, for Petitioner.

Shane Rooney, Asst. Counsel, Harrisburg, for respondent.

Philip A. Bertocci, Philadelphia, for intervenor, Association of Community Organizations for Reform Now.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Philadelphia Gas Works (PGW) on its own behalf and by the Philadelphia Facilities Management Corporation (PFMC)[1] petitions for review of the July 18, 2005, order of the Pennsylvania Public Utility Commission (PUC), which denied PGW's petition for reconsideration of the PUC's disapproval of PGW's proposed means-tested Senior Citizen Discount (SCD) program. We affirm.

PGW filed its SCD petition with the PUC, seeking approval to offer a 20% discount for consumers sixty-five (65) years of age whose household income, regardless of size, does not exceed 250% of the federal poverty level for a two-person family, which is approximately $30,000 per year.[2] (PGW's brief, ex. D at 2.[3]) Section 2212(r)(1) of the Public Utility Code (Code) provides:

> The [PUC] *may approve* a program designed to provide discounted rates for natural gas distribution and supply services to senior citizens residing in the service territory of a city natural gas distribution operation *provided that such rates and the terms of such program are just and reasonable.*

66 Pa.C.S. § 2212(r)(1) (emphasis added). On October 9, 2003, the PUC referred PGW's SCD petition to the Office of Administrative Law Judge (ALJ) for development of a record and the issuance of a Recommended Decision. On January 9, 2004, PGW filed a Stipulation and Settlement, and, on February 6, 2004, the ALJ issued a decision recommending that the PUC approve the Stipulation and Settlement.[4] (PGW's brief, ex. D at 2–3.)

On May 18, 2004, the PUC issued an order holding the Stipulation and Settlement in abeyance pending the development of a sufficient record and remanding the matter for further proceedings.[5] After

1. PFMC is a Pennsylvania non-profit corporation participating in this case as operator and manager of PGW. (PGW's brief at 8 n. 1.)

2. Before PGW came under the jurisdiction of the PUC, PGW had offered a senior citizen discount program that was *not* based on a person's income level. Pursuant to section 2212(r)(2) of the Public Utility Code, 66 Pa. C.S. § 2212(r)(2), individuals who were receiving that discount are entitled to continue doing so.

3. Exhibit D to PGW's brief is the PUC's May 18, 2004, opinion and order.

4. The Stipulation and Settlement was joined by the Office of Small Business Advocate, the Consumers Education and Protective Association, the Association of Community Organizations for Reform Now, the Tenants' Action Group and the Action Alliance of Senior Citizens of Greater Philadelphia. The Office of Consumer Advocate expressed support for the proposed settlement, and the only other party, Philadelphia Industrial Consumers and Gas Users Group, did not oppose it.

5. The PUC required the development of a record on eight issues: (1) does any other utility regulated by the PUC have a senior discount program, and, if so, what are the income limits; (2) does any other utility in Pennsylvania have an assistance program for which customers above 150% of the federal poverty level are eligible; (3) what does the average PGW residential customer pay each month to fund assistance programs; (4) how was the 20% discount derived; (5) what is the estimated cost of the means-tested SCD program and the non-means-tested SCD program in each year through 2020; (6) what is the average monthly consumption for residential heating and non-heating customers; (7) how did PGW determine that the means-tested SCD would result in 1,300 new participants each year; and (8) what is PGW's position on statements made by PGW in other petitions filed with the PUC, i.e., that PGW is in a precarious financial position, that it is increasingly difficult for PGW's customers in Philadelphia to absorb increases in the commodity price of natural gas because of declining income levels, that price levels are projected to remain at close to the current levels for the foreseeable future, and that an increasing number of formerly "good paying" customers are now having difficulty paying their bills. (PGW's brief, ex. D at 3–5.)

taking additional evidence, the ALJ issued a decision on August 13, 2004, recommending approval of the means-tested SCD program and the Stipulation and Settlement. (R.R. III at 1055a, 1130a; PGW's brief, ex. A at 4.[6]) The Office of Trial Staff (OTS), which is responsible for representing the public interest in all PUC proceedings, filed exceptions challenging the ALJ's recommendation.[7] (R.R. III at 1147a–56a.)

■ On October 27, 2004, the PUC granted the exceptions of OTS, stating that, as laudable as PGW's means-tested SCD program may be, the PUC is not able to approve it. The PUC gave several reasons. First, PGW described its financial situation as "dire" and stated that the number of "good paying" customers is decreasing; thus, the SCD program would reduce PGW's much-needed cash flow. Second, PGW would give discounts to senior citizens who were 250% above the federal poverty level, notwithstanding PGW's statement in support of a different petition that any customer above 150% of the federal poverty level has the ability to pay the full bill. Third, because of the increased longevity of senior citizens and the aging of baby boomers, the PUC rejected testimony that only 1,300 households will enroll in the SCD program each year. Fourth, the PUC also rejected testimony that the SCD program would cost only $365,000 per year because PGW's own figures showed that the program would cost, on average, $3,802,436 per year. Finally, the PUC noted that low-income senior citizens

are eligible for other programs designed to assist households with paying their utility bills. (PGW's brief, ex. A at 8–10.) PGW filed a petition for reconsideration, which the PUC denied. PGW now petitions this court for review.[8]

## I. Section 2212(r)(1)

PGW argues that the PUC abused its discretion in denying PGW's means-tested SCD program for reasons other than those set forth in section 2212(r)(1) of the Code, viz., that the rates and terms of the program are not just and reasonable. We disagree.

■ Although the PUC did not specifically state that the rates and terms of PGW's means-tested SCD program are not just and reasonable, it is clear that this was the PUC's determination. The PUC concluded that the rates and terms of PGW's means-tested SCD program were not just or reasonable because: (1) PGW is in "dire" financial condition, and the number of "good paying" customers is decreasing; (2) given the increasing longevity of senior citizens and the aging of baby boomers, more than 1,300 households would enroll each year; (3) the program's cost to PGW's other customers would average over $3.8 million per year; and (4) the program would give a discount to senior citizens who have the ability to pay their full bills. Thus, the PUC complied with section 2212(r)(1) of the Code in denying PGW's means-tested SCD program.

---

6. Exhibit A to PGW's brief is the PUC's October 27, 2004, opinion and order.

7. Section 306 of the Code created the OTS as the prosecutorial arm of the PUC. 66 Pa.C.S. § 306. "If the Director of Trial Staff is of the opinion that the initiation of a proceeding is necessary to protect the public interest, he shall request that the [PUC] initiate the appropriate proceeding." 66 Pa.C.S. § 306(b)(1).

8. This court has held that a party may appeal from a PUC order denying reconsideration. *Columbia Gas of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*, 112 Pa. Cmwlth. 611, 535 A.2d 1246 (1988). Our scope of review in such cases is limited to determining whether the PUC abused its discretion in denying the petition for reconsideration. *Id.*

## II.  Section 2212(s)

PGW next argues that, in denying its proposed means-tested SCD program, the PUC usurped the power of the City of Philadelphia in violation of section 2212(s) of the Code.  We disagree.

Section 2212(s) of the Code provides, in pertinent part, as follows:

> Nothing contained in this title shall be construed to abrogate or limit the executive or legislative powers of a city that owns a city natural gas distribution operation to legislate or otherwise determine the powers, functions, budgets, activities and mission of the city natural gas distribution operation . . . including, but not limited to, the ownership, governance, management or control thereof.

66 Pa.C.S. § 2212(s).

It is true that section 2212(s) of the Code preserves a city's power with respect to the powers, functions, budgets, activities and mission of its natural gas operation.  However, the PUC did not usurp that power from the City of Philadelphia.  Because PGW's means-tested SCD program affects the *rates* charged to all customers of PGW, the program involves rate-making, and this court has held that section 2212(s) of the Code does not preserve any rate-making power for a city.  *See City of Philadelphia v. Pennsylvania Public Utility Commission*, 829 A.2d 1241 (Pa. Cmwlth.2003) (stating that the statute reposes the rate-making function solely in the PUC).  Indeed, it is because an SCD program involves rate-making that section 2212(r)(1) of the Code gives the PUC power to approve, or disapprove, an SCD program.

9.  Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *National*

## III.  Substantial Evidence

Finally, PGW argues that the record does not contain substantial evidence to support the findings that serve as the PUC's basis for denying PGW's means-tested SCD program.[9]  We disagree.

PGW argues that the record lacks substantial evidence to support the PUC's finding that the proposed SCD program will reduce PGW's much-needed cash flow.  However, the record contains PGW's admission that:  (1) PGW is in a precarious financial position;  (2) income levels in Philadelphia are dropping;  and (3) an increasing number of "good paying" customers are having difficulty paying their bills.  A reasonable mind might conclude from such evidence that the SCD program will reduce PGW's much-needed cash flow.

PGW argues that the record lacks substantial evidence to support a finding that 250% of the federal poverty level is not appropriate here.  However, the record contains PGW's admission that individuals with incomes above 150% of the federal poverty level can pay their full bills.  (R.R. III at 821a–22a.)  Thus, the record contains substantial evidence to support the PUC's conclusion that 250% is not just or reasonable.

PGW argues that the record lacks substantial evidence to support the PUC's finding that PGW's estimated annual cost of $365,000 is questionable when PGW's own figures show an average annual cost of more than $3.8 million for the period from 2005 to 2020.  (*See* R.R. II at 443a.)  PGW now acknowledges that the average annual cost of the means-tested SCD program would exceed $365,000 for the period from 2005 to 2020, but PGW asserts that its figures show an average annual cost of

*Fuel Gas Distribution Corporation v. Pennsylvania Public Utility Commission*, 677 A.2d 861 (Pa.Cmwlth.1996).

only $3.4 million. (*See* PGW's brief at 29–30.) However, the ALJ recommended approval of PGW's means-tested SCD program based on the ALJ's finding that the program's annual cost would be only $365,000. (*See* PGW's brief, ex. A at 7.) Obviously, in reviewing the ALJ's recommendation, the PUC's concern was that the average annual cost would be ten times that amount. PGW's concession here that the average annual cost would be $3.4 million does not diminish the concern for cost.

Accordingly, we affirm.

## ORDER

AND NOW, this 5th day of May, 2006, the order of the Pennsylvania Public Utility Commission, dated July 18, 2005, is hereby affirmed.