IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Interstate Gas Supply, Inc. d/b/a : 
IGS Energy, NRG Energy, Inc. and : 
Shipley Choice LLC d/b/a Shipley : 
Energy, : 
                   Petitioners : 
                    : 
        v. : No. 472 C.D. 2022
                    : 
Public Utility Commission, : 
              Respondent : Argued: February 8, 2023

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                             FILED: April 28, 2023

      Petitioners Interstate Gas Supply, Inc. d/b/a IGS Energy, NRG Energy, Inc. and Shipley Choice LLC d/b/a Shipley Energy (collectively Petitioners), each of which are electric generation suppliers,[1] petition for review of Respondent Public

---

[1] An electric generation supplier is statutorily defined, in relevant part, as:

> A person or corporation, including municipal corporations which choose to provide service outside their municipal limits except to the extent provided prior to the effective date of this chapter, brokers and marketers, aggregators or any other entities, that sells to end-use customers electricity or related services utilizing the jurisdictional transmission or distribution facilities of an electric distribution company or that purchases, brokers, arranges or markets electricity or related services for sale to end-use customers utilizing the

**(Footnote continued on next page…)**

Utility Commission's (Commission) August 26, 2021 opinion and order (First Order).[2] Through the First Order, the Commission ruled that certain electric distribution companies' (electric distribution companies or EDCs)[3] policy of providing what is known as "on-bill billing" for their own non-commodity goods and services, while not providing the same for non-commodity goods and services offered by Petitioners, was not unreasonably discriminatory and, thus, did not violate the Public Utility Code, 66 Pa. C.S. §§ 101-3316, or the Electricity Generation Customer Choice and Competition Act (Competition Act), 66 Pa. C.S. §§ 2801-2815. By doing so, the Commission granted exceptions that had been filed by the EDCs regarding a Commission Administrative Law Judge's (ALJ) initial decision, in which the ALJ had determined that the EDCs handling of on-bill billing was, in

---

> jurisdictional transmission and distribution facilities of an electric distribution company.

66 Pa. C.S. § 2803.

[2] Though Petitioners refer to Respondent as "Public Utility Commission," the correct name for that entity is "Pennsylvania Public Utility Commission."

[3] An electric distribution company is statutorily defined as: "The public utility providing facilities for the jurisdictional transmission and distribution of electricity to retail customers, except building or facility owners/operators that manage the internal distribution system serving such building or facility and that supply electric power and other related electric power services to occupants of the building or facility." 66 Pa. C.S. § 2803.

> Typically, in a given region, there is one [e]lectric [d]istribution [c]ompany. The Commission appoints that [e]lectric [d]istribution [c]ompany as the default service provider for that region[, and] energy consumers in [that region] are automatically enrolled as customers of [that designated electric distribution company]. However, these consumers can also choose to purchase their electrical service from an alternative source, *i.e.*, an [e]lectric [g]eneration [s]upplier.

*Dauphin Cnty. Indus. Dev. Auth. v. Pa. Pub. Util. Comm'n*, 123 A.3d 1124, 1126 (Pa. Cmwlth. 2015).

fact, unreasonably discriminatory and did therefore violate the Public Utility Code. In addition, Petitioners petition for review of the Commission's April 14, 2022 opinion and order (Second Order), through which the Commission denied Petitioners' Joint Petition for Reconsideration and/or for Reopening of the Record of the Proceeding. After thorough review, we affirm the Commission, in full, as to both the First Order and the Second Order.

## I. Background

As explained by the Commission:

> [This] case concerns a billing practice known in the utility industry as "on-bill billing," whereby a company includes non-commodity goods and services on its monthly utility bills to its customers.[4] In the present case, the EDCs offer their own non-commodity goods and services via "on-bill billing" to their customers. [Petitioners] are free to do the same via their own direct billing of customers. Here, however, [Petitioners] sought to require the EDCs, which are required by statute to provide customer billing for electric service provided by [Petitioners], to also provide the [Petitioners] with the same "on-bill billing" services for non-commodity (other than electric) for [Petitioners'] customers as the EDCs were providing its own customers.
>
> . . . .
>
> On October 25, 2019, [Petitioners] filed a Formal Complaint (Complaint) . . . alleging that the EDCs' conduct of providing a billing service, known in the industry as "on-bill billing," for non-commodity products and services that it provides for the benefit of their own electric distribution customers, while refusing to provide "on-bill billing" for the [electric generation suppliers]

---

[4] Neither the Commission nor Petitioners explain exactly what constitutes "non-commodity goods and services" in the context of this matter. We note, however, that the Commission adopted the ALJ's factual finding that "[t]he [electric distribution companies] have a long history of offering non-commodity products and services, such as surge protection and line repair programs, to their customers." *See* First Order at 11. In other words, it appears that this phrase encompasses anything that does not directly pertain to the generation or transmission of electricity.

serving customers on its systems, violates [certain portions of] the Public Utility Code [and the Competition Act], . . . as well as [*Pennsylvania Public Utility Commission v. Columbia Gas of Pennsylvania, Inc.*, Docket No. R-2018-2647577 (filed Jan. 16, 2020) (*Columbia*),] a Commission Opinion and Order in a recent case involving [a] similar issue in the natural gas industry.[] For relief, [Petitioners] requested that the Commission sustain the Complaint and require that if the [EDCs] provide billing services for any provider of non-commodity services on its utility bills, that it provide the same service to similarly situated providers of those services on a non-discriminatory basis, or be prohibited from providing such billing service at all. *See* Complaint at 1-2.

On November 14, 2019, the EDCs filed an Answer and New Matter to the Complaint averring that they offer non-commodity products and services to their customers but have not authorized [electric generation suppliers] to bill for non-commodity products and services on the EDCs['] monthly electric service bills. In their New Matter, which was accompanied by a Notice to Plead, the EDCs argued that their tariffs prohibit the relief requested in the Complaint. The EDCs further argued that these tariffs were recently approved as part of their default service plans (DSPs) in 2018 and [Petitioners] were served copies of those documents. The EDCs also addressed other issues raised by [Petitioners] in their Complaint and requested that the Complaint be dismissed with prejudice.

On December 4, 2019, [Petitioners] filed a reply to the EDCs' New Matter. In their answer, [Petitioners] denied the EDCs' claim to the extent they contended it was not appropriate or otherwise permissible to file a complaint regarding the legality of a service or tariff of a public utility. Additionally, [Petitioners] denied, *inter alia*, the EDCs' averment regarding their participation in the EDCs' DSPs proceedings in 2018 and its impact on the Complaint. [Petitioners] requested that their Complaint be sustained, and their requested relief be granted.

. . . .

In the Initial Decision, issued on November 18, 2020, the ALJ sustained the Complaint finding that the [EDCs] do

4

not provide [Petitioners with] rates, terms of access and conditions that are comparable to the [EDCs'] own use of the system. The ALJ found that the EDCs have, therefore, made an unreasonable preference or advantage, and established or maintained an unreasonable difference as to service[,] in violation of the [Public Utility] Code.

. . . .

Exceptions to the Initial Decision were filed by the EDCs and the [Office of Consumer Advocate (OCA)] on December 8, 2020.[] Replies to the Exceptions were filed by [Petitioners] on December 18, 2020.

First Order at 2-5 (footnotes omitted).

On August 26, 2021, the Commission issued its First Order, through which it granted the EDCs' exceptions and reversed the ALJ's Initial Decision. *Id.* at 29. In doing so, the Commission concluded that the EDCs' handling of on-bill billing in this situation comported with the Public Utility Code's relevant requirements and did not violate the Competition Act. *Id.* at 25-28. Furthermore, the Commission ruled that *Columbia* was distinguishable, as, unlike in this matter, "[t]he material fact in [that situation] was that Columbia treated other third parties differently than [a number of its] third-party former affiliates[,]" and because the Public Utility Code applies broader competition-related duties upon natural gas utilities like Columbia. *Id.* at 22-25.[5]

Thereafter, Petitioners sought reconsideration of the Commission's First Order, and the reopening of the record, on the basis that they had recently discovered new evidence that the EDCs did, in fact, provide on-bill billing to HomeServe USA (HomeServe), a third party. This, in Petitioners' view, made the situation one that

---

[5] The Commission also denied an exception filed by the OCA to the overall practice of on-bill billing, on the basis "that the OCA's Exception goes beyond the issue presented to have the Commission deny a lawful billing practice." First Order at 29. That denial is not the subject of this appeal.

was analogous to the scenario present in *Columbia*, in that third parties were being treated in a disparate manner, with some being provided with on-bill billing for their non-commodity goods and services, while others were not.

The Commission initially granted the reconsideration request in September 2021, in order to review its substance, but ultimately denied it on the merits through its Second Order on April 14, 2022. In doing so, the Commission determined that

> the relationship with HomeServe is not one which demonstrates that the EDCs provide "on-bill billing" to non-affiliated third parties. Rather, the EDCs contracted with HomeServe to serve as the program administrator for certain of the EDCs' own non-commodity products and services. *See* EDCs Answer at 9-11.

> As explained by the EDCs, the EDCs contracted with HomeServe to provide certain of the EDCs' *own* non-commodity products and services, such as electrical line and water heater protection plans, which the EDCs noted was thoroughly explained in the EDCs' DSP V proceeding. *See*, *id*. We find that the EDCs do not, as alleged by [Petitioners], allow HomeServe to bill for its own non-commodity products and services on the EDCs' bills.

Second Order at 17-18 (emphasis in original).

This Petition for Review followed shortly thereafter.

## II. Discussion

Petitioners offer several arguments for our consideration, which we summarize as follows.[6] First, the Commission erroneously interpreted Section 1502

---

[6]   This Court's authority to reverse a decision of the [Commission] is limited to circumstances where substantial evidence supporting a necessary factual finding is lacking in the record, where the [Commission] erred as a matter of law, and where constitutional rights were violated. 2 Pa. C.S. § 704; *PECO Energy Co. v. Pa. Pub. Util. Comm'n*, . . . 791 A.2d 1155, 1160 ([Pa.] 2002). . . . This Court

**(Footnote continued on next page…)**

6

of the Public Utility Code, 66 Pa. C.S. § 1502, as permitting EDCs to provide a service to itself, in this case on-bill billing for non-commodity goods and services, while also refusing to offer that same service to third parties. In addition, the Commission's interpretation of Section 1502 arbitrarily departs from the reasoning it articulated in *Columbia* regarding unreasonable discrimination in the context of on-bill billing. Petitioners' Br. at 19-22. Second, the Commission committed an error of law by interpreting Section 2804(6) of the Competition Act, 66 Pa. C.S. § 2804(6), as only barring EDCs from discriminating against electric generation suppliers regarding electrical transmission and distribution-related services and facilities, rather than regarding all types of services and facilities. *Id.* at 22-24. Finally, the Commission erroneously and arbitrarily denied Petitioners' Petition for Reconsideration regarding the First Order, by both improperly disregarding the

---

may not "substitute its judgment for that of the [Commission] when substantial evidence supports the [Commission's] decision on a matter within the [C]ommission's expertise." [*Popowsky v. Pa. Pub. Util. Comm'n*, 706 A.2d 1197, 1201 (Pa. 1997)]. "Judicial deference is even more necessary when the statutory scheme is technically complex." *Id.* at 1203.

With respect to issues of law, our standard of review is *de novo* and our scope of review is plenary. *Mercury Trucking, Inc. v. Pa. Pub*[.] *Util. Comm'n*, . . . 55 A.3d 1056, 1082 ([Pa.] 2012). [As for] challenges to the [Commission's] factual findings, "[s]ubstantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Phila. Gas Works v. Pa. Pub. Util. Comm'n*, 898 A.2d 671, 675 n.9 (Pa. Cmwlth. 2006).

*Coal. for Affordable Util. Servs. & Energy Efficiency in Pa. v. Pa. Pub. Util. Comm'n*, 120 A.3d 1087, 1094-95 (Pa. Cmwlth. 2015).

evidence presented by Petitioners and by relying upon unsworn statements made by the EDCs in opposition to the request for reconsideration. *Id.* at 24-28.[7]

Petitioners' first two arguments focus upon the language used in specific provisions of the Public Utility Code and the Competition Act and, thus, present questions of pure statutory interpretation.

> The object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa. C.S. § 1921(a). In pursuing that end, we are mindful a statute's plain language generally provides the best indication of legislative intent. *See Com*[.] *v. McClintic*, . . . 909 A.2d 1241 ([Pa.] 2006). Thus, statutory construction begins with examination of the text itself. [*Se.*] *Pa. Transp. Auth. v. Holmes*, 835 A.2d 851 (Pa. Cmwlth. 2003).
>
> In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a).
>
> Moreover, although we must "listen attentively to what a statute says[;] [o]ne must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, . . . 788 A.2d 955, 962 ([Pa.] 2001). We may not insert a word the legislature failed to supply into a statute. *Girgis v. Bd. of Physical Therapy*, 859 A.2d 852 (Pa. Cmwlth. 2004).

*Malt Beverage Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 175-76 (Pa. Cmwlth. 2007). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "However, if we deem the statutory language ambiguous, we must

---

[7] The EDCs have intervened in this matter and have filed a brief, as have OCA and the Retail Energy Supply Association (RESA). OCA's and the EDCs' respective arguments largely mirror the positions taken on appeal by the Commission, while RESA's are substantially similar to those articulated by Petitioners. *Compare* Commission's Br. at 12-33, *with* EDCs' Br. at 10-39 and OCA's Br. at 12-21, and Petitioners' Br. at 17-28, *with* RESA's Br. at 6-20.

8

then ascertain the General Assembly's intent by statutory analysis, wherein we may consider numerous relevant factors." *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013) (citing 1 Pa. C.S. § 1921(c)). "An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014).

Furthermore,

> we recognize that the Commission's "interpretations of the [Public Utility] Code . . . and its own regulations are entitled to great deference and should not be reversed unless clearly erroneous." *Energy Conservation Council of Pa. v. Pub. Util. Comm'n*, 995 A.2d 465, 478 (Pa. Cmwlth. 2010) (citing [*Popowsky*, 706 A.2d at 1203]). . . . Similarly, because the Commission is "the administrative body charged with implementing the Competition Act, [it] is entitled to substantial deference in the performance of its duties, and the [Commission's] interpretation of the Competition Act should not be overturned unless it is clear that such construction is erroneous." *George v. Pa. Pub. Util. Comm'n*, 735 A.2d 1282, 1288 (Pa. Cmwlth. 1999). However, when statutory language is unambiguous, we will not give the Commission discretion in its interpretation. "'[W]here [the] statutory language is clear, such interpretive discretion ends and the [Commission] must abide by the statute.'" *Dauphin* [*Cnty.*] *Indus. Dev. Auth. v. Pa. Pub. Util. Comm'n*, 123 A.3d 1124, 1133 (Pa. Cmwlth. 2015) (quoting *Pa. Power Co. v. Pub. Util. Comm'n*, 932 A.2d 300, 306 (Pa. Cmwlth. 2007)).

*NRG Energy, Inc. v. Pa. Pub. Util. Comm'n*, 233 A.3d 936, 948-49 (Pa. Cmwlth. 2020).

In this instance, the relevant statutory provisions are Section 1502 of the Public Utility Code and Sections 2804(6) and 2807(c) of the Competition Act. Section 1502 states:

No public utility shall, as to service, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to service, either as between localities or as between classes of service, but this section does not prohibit the establishment of reasonable classifications of service.

66 Pa. C.S. § 1502. As for Sections 2804(6) and 2807(c), they read as follows:

Consistent with the provision of section 2806 [of the Competition Act, which addresses the deregulation of the electricity market in Pennsylvania], the [C]ommission shall require that a public utility that owns or operates jurisdictional transmission and distribution facilities shall provide transmission and distribution service to all retail electric customers in their service territory and to electric cooperative corporations and electric generation suppliers, affiliated or nonaffiliated, on rates, terms of access and conditions that are comparable to the utility's own use of its system.

*Id.* § 2804(6).

Customer billing.--Subject to the right of an end-use customer to choose to receive separate bills from its electric generation supplier, the electric distribution company may be responsible for billing customers for all electric services, consistent with the regulations of the [C]ommission, regardless of the identity of the provider of those services.

(1) Customer bills shall contain unbundled charges sufficient to enable the customer to determine the basis for those charges.

(2) If services are provided by an entity other than the electric distribution company, the entity that provides those services shall furnish to the electric distribution company billing data sufficient to enable the electric distribution company to bill customers.

> (3) The electric distribution company shall not be required to forward payment to entities providing services to customers, and on whose behalf the electric distribution company is billing those customers, before the electric distribution company has received payment for those services from customers.

*Id.* § 2807(c).

The takeaway from the plain language of these statutes is that EDCs are *not* legally prohibited from providing themselves with on-bill billing for non-commodity goods and services while declining to offer the same privilege to third parties. Section 1502 of the Public Utility Code explicitly states that "[n]o public utility shall, as to service, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage." 66 Pa. C.S. § 1502. The phrase "make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation" establishes that this statute addresses the services public utilities offer *to* other entities, *not* about those which public utilities make available for their *own* use; as such, it would be illogical and extra-textual to read Section 1502 as *also* barring public utilities from providing themselves with different service offerings than those they provide to third parties. Additionally, it is difficult to see how the EDCs' refusal to provide Petitioners with the desired type of on-bill billing would "subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage[,]" given that Petitioners and all other electric generation suppliers would be operating under the same regime, in which none of them would be given the ability to have their non-commodity goods and services billed in such a manner. This reading is supported by the language used in Section 2804(6) of the Competition Act, which explicitly states

11

that "the commission shall require that a public utility that owns or operates jurisdictional [electric] transmission and distribution facilities shall provide . . . all retail electric customers in their service territory and . . . electric cooperative corporations and electric generation suppliers, affiliated or nonaffiliated," with the same level of electric transmission and distribution services that the EDCs offer themselves. *Id.* § 2804(6). Such a targeted directive would be unnecessary if Section 1502 broadly barred public utilities from refusing to offer electric generation suppliers the same level and kind of services with which public utilities provide themselves. *See* 1 Pa. C.S. § 1932 ("(a) Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things. (b) Statutes *in pari materia* shall be construed together, if possible, as one statute."). Finally, Section 2807(c) of the Competition Act makes clear that on-bill billing for third-party services is not a mandatory burden imposed upon EDCs. In sum, Section 1502 of the Public Utility Code only applies regarding equality of services offered to different third parties (rather than regarding services with which public utilities provide themselves), and Section 2804(6) of the Competition Act does not itself bar discrimination regarding non-commodity goods and services. The Commission's interpretation of these laws in this context was therefore correct and, in addition, was not inconsistent with its decision in *Columbia*.

As for Petitioners' remaining argument, we conclude that the Commission did not abuse its discretion when it denied Petitioners' Petition for Reconsideration regarding the First Order. The Commission's standard for granting a petition for reconsideration

> requires that [the petitioner] identify new and novel arguments, not previously heard, or considerations which appear to have been overlooked or not addressed by the Commission, [rather that offering what amounts to] a

12

second motion to review and reconsider, [in order] to raise the same questions which were specifically considered and decided against them.

*Exec. Transp. Co. v. Pa. Pub. Util. Comm'n*, 138 A.3d 145, 150 (Pa. Cmwlth. 2016) (some punctuation omitted). "[T]his Court's scope of review of a Commission's denial of reconsideration is limited to determining whether the Commission abused its discretion. . . . An abuse of discretion occurs if the agency decision demonstrates bad faith, fraud, capricious action or an abuse of power." *J.A.M. Cab Co. v. Pa. Pub. Util. Comm'n*, 572 A.2d 1317, 1318 (Pa. Cmwlth. 1990) (internal citations omitted).

In this instance, the Commission concluded that reconsideration was not warranted, because *Petitioners' own evidence* showed that HomeServe was operating as an agent of the EDCs, in that HomeServe had contracted with the EDCs to provide certain kinds of non-commodity goods and services on the EDCs' behalf, rather than HomeServe's own, separate non-commodity goods and services. As explained by the Commission:

> HomeServe is providing non-commodity products and services on behalf of [the EDCs] as the program administrator for these services. HomeServe can only act within the interest delegated to it by [the EDCs] under the contract between [the EDCs] and HomeServe. Billing for HomeServe services provided outside the contract are not included on the utility bill[s sent by the EDCs to their customers].
>
> As the program administrator for the non-commodity products offered by [the EDCs], HomeServe is the contracted agent for [the EDCs] and can only act under the express authority of the contract entered into by [the EDCs] and HomeServe. Such contracts evidence an express agency relationship. . . . Beyond the contract between [the EDCs] and HomeServe, Exhibits A-D to [Petitioners'] Petition for Reconsideration all prominently bear the name of the FirstEnergy Company and the names of some or all of the individual . . . EDCs. In particular, at the top of the screenshot in Exhibit D, it states that the

13

> HomeServe services are being provided "in partnership with West Penn Power, a FirstEnergy Company." [Reproduced Record at] 696a. In short, rather than showing that [the EDCs were] providing on-bill billing to a third party for non-commodity products and services, the evidence presented by [Petitioners] proved that [the EDCs] had contracted with HomeServe, and that HomeServe was operating on behalf of [the EDCs] providing non-commodity products and services under the imprimatur of [the] EDCs.
>
> . . . .
>
> Under no construction of the record in this matter can [any electric generation supplier] be considered to have the same relationship with [the EDCs] as that between [the EDCs] and HomeServe. HomeServe is clearly acting on behalf of, and in the name of, [the EDCs].

Commission's Br. at 32-33 (citation omitted). Given the nature of the record evidence, as well as that evidence's support for the Commission's explanation, there is no basis for concluding that the Commission abused its discretion by denying Petitioners' Petition for Reconsideration.

### III. Conclusion

In keeping with the foregoing, we affirm the Commission's First Order and Second Order.

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Interstate Gas Supply, Inc. d/b/a : 
IGS Energy, NRG Energy, Inc. and : 
Shipley Choice LLC d/b/a Shipley : 
Energy, : 
               Petitioners : 
              : 
      v. : No. 472 C.D. 2022
              : 
Public Utility Commission, : 
               Respondent : 

# **O R D E R**

AND NOW, this 28th day of April, 2023, it is hereby ORDERED that Respondent Public Utility Commission's (Commission) August 26, 2021 opinion and order, as well as the Commission's April 14, 2022 opinion and order, are AFFIRMED.

 

_____

ELLEN CEISLER, Judge

Interstate Gas Supply, Inc. d/b/a :
IGS Energy, NRG Energy, Inc. and :
Shipley Choice LLC d/b/a Shipley :
Energy, :
     Petitioners :
       :
    v.    : No.  472 C.D. 2022
       : Argued:  February 8, 2023
Public Utility Commission, :
     Respondent :


BEFORE:  **HONORABLE RENÉE COHN JUBELIRER,** President Judge
     **HONORABLE PATRICIA A. McCULLOUGH,** Judge
     **HONORABLE ANNE E. COVEY,** Judge
     **HONORABLE MICHAEL H. WOJCIK,** Judge
     **HONORABLE ELLEN CEISLER,** Judge
     **HONORABLE LORI A. DUMAS,** Judge
     **HONORABLE STACY WALLACE,** Judge

**OPINION NOT REPORTED**

**DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**    **FILED:  April 28, 2023**


   Upon my review of this matter, I am persuaded by the arguments of the electric generation suppliers Interstate Gas Supply, Inc. d/b/a IGS Energy, NRG Energy, Inc., and Shipley Choice LLC d/b/a Shipley Energy (EGSs) that the Public Utility Commission (Commission) erred in reversing the Administrative Law Judge's (ALJ) finding that certain electric distribution companies (EDCs) violated Sections 1502 and 2804(6) of the Public Utility Code (Code), 66 Pa.C.S. §§ 1502 and 2804(6).  Therefore, I must, respectfully, dissent.

   The Code prohibits public utilities from discriminating in the provision of services by providing one service to some parties and not to others.  Section 1502 of

the Code states: "**No public utility shall, as to service**, make or grant any **unreasonable preference or advantage to any** person, **corporation**, or municipal corporation, **or subject any** person, **corporation**, or municipal corporation **to any unreasonable prejudice or disadvantage**." 66 Pa.C.S. § 1502 (emphasis added). And, Section 2804(6) of the Code, a part of the Competition Act that restructured the electric industry, provides:

> Consistent with the provision of [S]ection 2806 [(deregulating energy generation)], the [C]ommission shall require that a public utility that owns or operates jurisdictional transmission and distribution facilities shall provide transmission and distribution service to all retail electric customers in their service territory and to electric cooperative corporations and electric generation suppliers, affiliated or nonaffiliated, **on rates, terms of access and conditions that are comparable to the utility's own use of its system**.

66 Pa.C.S. § 2804(6) (emphasis added). Unlike the Majority, I agree with the EGSs that the EDCs practice of on-bill billing for their own non-commodity goods and services, while not offering the same on-billing service to EGSs, violates these sections.

"[T]he service of providing the utility bill to customers, i.e., utility billing, is a utility service," and, therefore, "is subject to the Commission's jurisdiction" and "to the requirements of . . . [Sections] 1502 and . . . 2804(6), which prohibit discrimination in the provision of utility service generally [and] specifically apply to the provision of utility service by EDCs to [] EGS[s]." (EGSs' Brief (Br.) at 17-18 (citing *Aronson v. Pa. Pub. Util. Comm'n*, 740 A.2d 1208, 1211 (Pa. Cmwlth. 1999) (referencing the information on billing statements as a public utility service); *Pa. Pub. Util. Comm'n v. Columbia Gas of Pa., Inc.*, (Pa. PUC Docket No. R-2018-2647577, filed Dec. 6, 2018), slip op. at 44).) *See also* Section 102 of the Code, 66

RCJ-2

Pa.C.S. § 102 (broadly defining "service" as including "any and all acts done, rendered, or performed, and any and all things furnished or supplied . . . by public utilities . . . in the performance of their duties . . . to their patrons . . . and the public"); Section 54.122(7) of the Commission's Regulations, 52 Pa. Code § 54.122 (requiring EDCs to supply all regulated services to nonaffiliated EGSs in the same manner as it does itself and must do so uniformly in a nondiscriminatory manner). The Commission's interpretation of Section 1502 as not "prohibit[ing] discrimination where a utility provides a service to itself at the exception of others" reads out of Section 1502 the "plain language prohibiting discrimination by a utility to '**any person, corporation, or municipal corporation**,'" by granting anti-discriminatory protection only where services are discriminatorily provided to third parties. (*Id.* at 19-20 (emphasis in original) (quoting 66 Pa.C.S. § 1502).) Section 1502 prohibits the provision of a preference or advantage to "any corporation," 66 Pa.C.S. § 1502, and "any" corporation should include the public utility itself, and not be limited to "another" corporation, which is the result of the Commission's interpretation. Holding otherwise is inconsistent with the Commission's decision in *Columbia Gas*, which held that discriminatory preferential treatment occurs where a utility provides an entity "a clear benefit" and "business advantage" by having a non-commodity service included on the utility's bill. (*Id.* at 20-21 (citing *Columbia Gas*, slip op. at 48-50).) Here, there is a "clear benefit" to the EDCs when they use on-bill billing for their non-commodity goods and services because it provides "convenience to customers[] by reserving the exclusive capabilities that go with billing for non-basic services on the utility bill for its own use." (*Id.* at 21.) Therefore, in my view, the EDCs action in providing a benefit to themselves keeps their competitors, the EGSs, "from having the same advantages . . . in providing

convenience to customers" and constitutes discrimination in violation of Section 1502 of the Code. (*Id.*)

This interpretation of Section 1502 is supported by Section 2804(6), which requires EDCs to provide, *inter alia*, rates and conditions to EGSs that are comparable to the EDCs' own rates and conditions. 66 Pa.C.S. § 2804(6). As the EGSs argue, the Commission's narrow interpretation of Section 2804(6) as not applying to the billing of non-commodity products and services allows EDCs to provide rates and conditions to the EGSs that are not comparable to the EDCs own, which is contrary to that section's plain language. (*Id.* at 23-24.) Although the Commission asserts billing is not a part of the distribution service referenced in Section 2804(6), this argument is "untenable" because "meter[ing] customer usage," "accumulat[ing] that data, and provid[ing] that data to [EGSs] to allow them to calculate customer bills" is part of the provision of distribution services that must be done on the same conditions as the EDCs own conditions. (EGSs' Reply Br. at 12-13.) Further, the Commission's interpretation appears to be "contrary to the express language of the Competition Act," which "clearly assigns to the EDCs the role of default biller" that "'is responsible for billing customers for all electric services . . . regardless of the identity of the provider of those services.'" (*Id.* at 13-14 (quoting Section 2807(c) of the Code, 66 Pa.C.S. § 2807(c)).)

Ultimately, I would hold that, if the EDCs provide on-bill billing services to themselves, thereby obtaining a benefit and business advantage associated with issuing their customers a convenient, single bill, they must provide the same services to the EGSs. If the EDCs do not offer the same services to the EGSs, they run afoul of the Code's anti-discrimination provisions found in Sections 1502 and 2804(6).

To remedy the discrimination, the EDCs must either "simply not provide the service" or must "provid[e] the service . . . without discrimination." (*Id.* at 11.)

For these reasons, I would hold the Commission erred in finding no violation of Sections 1502 and 2804(6) and would reverse the Commission's August 26, 2021 Order. I therefore respectfully dissent.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge McCullough joins in this Dissenting Opinion.